JAMES A. LINDSAY v. FRANCIS M. EASTWOOD.

*Drains—Improvement—Assessment of benefits—Lien for amount of tax—Warranty deed—Covenant against incumbrances.*

1. Drain taxes assessed under the provisions of chapter 40, How. Stat., became a lien as soon as they became a charge on the land, by the assessment of benefits made by the drain commissioner.

2. Under chapter 40, How. Stat., the assessment was made by the drain commissioner, and the action of the supervisor was merely ministerial, for the purpose of collection; he having no authority to change or modify such assessment, nor to review it in any manner, but his duty simply being to levy the amount assessed by the drain commissioner upon his tax roll.

3. Under the drain law of 1881 (chapter 40, How. Stat.) the mere delay of the drain commissioner to present the assessment list to the supervisor, or of the supervisor in extending it upon the tax roll, did not invalidate the lien attaching to the land from the time of the assessment of benefits by the drain commissioner.

4. A covenant against incumbrances, made after the assessment of benefits by a drain commissioner, but before the supervisor has extended the tax, is broken as soon as made.

Error to Wayne. (Hosmer, J.) Argued October 4, 1888. Decided November 1, 1888.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Stewart & Galloway,* for appellant.

*B. T. Prentis,* for defendant.

[The points of counsel are stated in the opinion.— REPORTER.]

CHAMPLIN, J. The plaintiff sued defendant in a justice's court, and declared orally on all the common counts, and specially for money paid to the use of the defendant

for a ditch tax for the year 1884, which plaintiff paid to discharge an assessment levied upon certain lands which he purchased of defendant in the month of September, 1885, and for which he received a full covenant warranty deed.

In 1884 the county drain commissioner of Wayne county, by virtue of proceedings taken before him, cleaned out, deepened, and widened what was called the "Blakely Ditch." He ascertained the cost and expense thereof, and apportioned and assessed the benefits upon the several parcels of land benefited by the cleaning out, widening, and deepening of the drain.

Among the parcels so assessed was the E. half of the N. W. fractional quarter of section 4, town 4 S., of range 10 E., containing 86 acres, then belonging to the defendant, Francis M. Eastwood. The amount apportioned to and assessed thereon by the drain commissioner was $80. This assessment appears to have been made by the drain commissioner on the 1st day of July, 1884, and was extended by the supervisor upon the general tax roll of the township for the year 1885.

On the 8th day of September, 1885, Francis M. Eastwood sold to the plaintiff, James A. Lindsay, and conveyed to him by warranty deed, the south $52\frac{1}{4}$ acres of the aforesaid 86 acres, describing it by metes and bounds. After the sale defendant paid to the township treasurer, who had the tax roll for the collection of the ditch tax aforesaid, two-fifths of the $80 assessed upon the 86 acres; intending thereby to pay what was his proportionate share of such tax. Upon this roll the whole E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ was assessed to defendant, Eastwood, and the whole of the ditch tax was levied and assessed thereon.

When plaintiff went to the treasurer to pay his taxes of 1885, he found that $48 of the ditch tax remained

unpaid, and requested the defendant to pay the same, but he refused to do so. Plaintiff thereupon paid such balance of ditch tax, and brings this suit to recover it back from defendant. Plaintiff claims that the ditch tax was an incumbrance upon the land at the time he purchased and received his deed from defendant, and that defendant was in duty bound to pay and discharge the same.

On the other hand, defendant claims that the ditch tax did not become a lien upon the land until after the 8th day of September, 1885, and then only by virtue of the general law, which makes taxes a lien from and after the first Monday of December in the year they are levied.·

The statute[1] under which this ditch tax was assessed declares:

"The taxes assessed upon any lands under the provisions of this act shall be, and are hereby, declared to be a perpetual lien upon such lands, to remain such until such taxes, with all lawful costs, interest, and charges, are fully paid, or otherwise legally discharged."

The question presented is, when do such taxes become a lien upon the land? We are of opinion that they become a lien as soon as they become a charge on the land, by the assessment of benefits made by the drain commissioner. The statute requires this officer to make an apportionment of the cost of construction, over and above that properly assessed upon the municipality, to the lands to be benefited by such drain, according to the sum of the assessment of benefits on each description which shall accrue to any piece of land by reason of the construction of such drain. He is also required to assess the amount of benefits so apportioned upon the respective parcels of land, and this assessment is subject to review by the

[1] How. Stat. § 1716.

commissioner upon the request of any parties in interest. He is to make a list showing such apportionment, and serve a copy thereof upon the supervisor of the township against which any sum is assessable; and thereupon it becomes the duty of the supervisor to levy and assess the sum so apportioned against such lands as are contained in the list, and extend the same upon the general tax roll of his township.

Under the statute, the assessment is made by the drain commissioner, and the action of the supervisor is merely ministerial, for the purpose of collection. He has no authority to change or modify such assessment, nor to review it in any manner. The duty which the supervisor performs is to levy the amount assessed by the drain commissioner upon his tax roll, and the statute further provides for the manner in which it shall be collected. The statute denominates these benefits assessed as taxes, and declares them to be a lien on the land from the time they are assessed. A mere delay of the drain commissioner to present the assessment list to the supervisor, or of the supervisor in extending it upon the tax roll, does not invalidate the lien.

The facts of this case show that the ditch tax in question was a lien and incumbrance upon the land sold by defendant to plaintiff at the time he conveyed it by warranty deed to him. The circuit judge held that as the tax could not be paid until it was spread upon the assessment roll in December, 1885, and the conveyance to plaintiff was in September previous thereto, it was not a lien upon the land when the deed was made. For the reasons above stated we think the circuit court erred. The fact that the lien could not be discharged until after the deed was given would not determine whether the incumbrance existed or not. A mortgage not due at the

time of a conveyance is an incumbrance, although it cannot be paid and discharged until after the sale.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred. .

