JACOBS *v.* UNION TRUST CO.

TAXATION—PAYMENT—WHO LIABLE—VENDOR AND PURCHASER—REPAYMENT.

As between a vendor and vendee of land, in the absence of express statute provision, a lien upon the land for taxes does not exist until the amount thereof is ascertained and has become a charge which may be discharged by payment; and where petitioner purchased land after it had been listed for taxes and before the tax was payable, he is not entitled to repayment of the amount of the tax from the vendor, although, as between the vendor and the public authorities, the tax was a debt from the time of listing the land for taxation.

Appeal from Wayne; Donovan, J. Submitted November 12, 1908. (Docket No. 58.) Decided December 21, 1908.

Petition by Abraham Jacobs against the Union Trust

Company, receiver of the City Savings Bank, for the repayment of money paid for taxes on certain real estate. From an order dismissing the petition, petitioner appeals. Affirmed.

*Bernard B. Selling*, for petitioner.

*Bowen, Douglas, Whiting & Murfin*, for defendant.

OSTRANDER, J. Petitioner, Jacobs, purchased land in the city of Detroit, at public sale, of the receiver of the City Savings Bank, April 27, 1903. He advised the receiver that he had been informed the city taxes for the current year should be paid by the vendor. The matter was left open, without prejudice to either party, and later, the vendor refusing to pay them, the taxes were paid by petitioner. He is seeking in this proceeding to recover the money so paid out. The single question presented is whether, at the time of the sale, the taxes were an obligation which the vendor, as between itself and the vendee, was bound to discharge.

It appears by the charter of the city of Detroit that assessments, viz., the listing and valuation of property for purposes of taxation, are made as of April 1st. Having completed a review and correction of assessments, it is the duty of the board of assessors to sign, and, on the third Tuesday in April, to return the rolls to the common council. The common council considers, and may correct errors in, the rolls, and hears and decides appeals from the action of the board of assessors. After the rolls have been corrected and confirmed by the common council, it is the duty of the board of assessors to apportion, ratably —the statute uses the term "assess"—the amount of all taxes authorized to be collected. When completed, the tax rolls are delivered to the comptroller and by him to the receiver of taxes. The particular roll was transmitted to the common council April 21st, and was confirmed May 7th. There was therefore no apportionment of taxes, no ascertainable money charge upon persons or upon

property before May 7th. The tax roll was received by the receiver of taxes July 1st, upon and after which date the taxes were due and payable. The charter does not specify the time when taxes shall become a lien. It does contain the following provisions:

" All city taxes shall become a debt against the owner from the time of the listing of property for assessment by the board of assessors, and shall become due and payable forthwith upon receipt of the tax roll by the receiver of taxes.     *     *     *

" All city taxes upon personal property shall be and remain a lien thereon until paid, and no transfer of the personal property assessed shall operate to divest or destroy such lien. All city taxes upon personal property and real estate and special assessments thereon, in addition to being a lien upon the property assessed, shall be and remain a debt against the owner of the property, or his estate after his death, until the same are paid, and such debt shall be unaffected by any statute of limitations." Detroit Charter (1904), chap. 10, §§ 9, 10.

It was distinctly held in *Eaton* v. *Chesebrough*, 82 Mich. 214, that, under the charter provisions then in force, taxes upon land, as between vendor and vendee, became a lien upon the land at the time the roll came to the hands of the receiver of taxes, which was then, as now, on July 1st. It is urged, however, that, because of changes made in 1901 to the charter provisions, the rule thus laid down is inapplicable. When that case was decided, the charter (chapter 10, § 9) provided that "upon receipt of the tax roll by the receiver of taxes, as hereinbefore provided, the taxes determined shall become a debt due and payable to the city." The argument advanced is that since by the amendment to the charter taxes become a debt of the owner from the time of the listing of property for assessment, although the debt is not due and payable until the roll comes to the receiver of taxes, it should now be held that the lien attaches as of April 1st, the date of listing property for assessment. The argument is supposed to be aided by an interpretation of the language of section 10 of

chapter 10, hereinbefore set out, which provision was also added to the charter in 1901. The argument would be conclusive if it is assumed that a tax upon land becomes a lien upon the land, as between the vendor and vendee thereof, at the time when, as between the public and the landowner, it becomes a debt of the landowner; but if we assume, as I think we must, in the absence of express statute provisions, that no tax is a lien (an incumbrance) upon land, as between the vendor and vendee thereof, until, at least, it has become an ascertained charge, from which the land may be relieved by payment, the argument is wholly inconclusive.

It is and has always been fundamental, in our revenue system, that a lien upon real estate exists for the purpose of collecting taxes levied thereon. Change of ownership does not affect it. If a particular day is named in the statute, from which a tax is deemed to be a lien upon land, such day, it has been held, will, in the absence of stipulation, determine, as between vendor and vendee, who should pay the tax; but although all real estate is subject to this lien, and although the proceeding to determine the sum for which the lien shall attach begins with the listing of property, there is, and, in the nature of things, there can be, no charge upon the property, no incumbrance, no enforceable lien, until the proportionate share of the public burden has been officially determined. Whether the legislature might make the amount of taxes thereafter to be ascertained a lien upon land from the time it was listed for taxation is a question not presented. We are satisfied it has not attempted to do this wholly unnecessary thing in providing, in a law relating wholly to the collection of the public revenue, that such taxes shall be a personal debt of the owner from the time his property is listed by the assessors.

The views here expressed are supported by the reasoning of the opinions in *Harrington* v. *Hilliard*, 27 Mich. 271, and *Lindsay* v. *Eastwood*, 72 Mich. 336. We are of opinion that, as between a vendor and vendee of land,

in the absence of express statute provision, a lien upon the land for unpaid taxes does not exist until the amount thereof is ascertained and has become a charge which may be discharged by payment.

The case at bar is ruled by *Eaton* v. *Chesebrough,* supra, and the determination of the court below is affirmed, with costs.

MONTGOMERY, HOOKER, MOORE, and McALVAY, JJ., concurred.