No. 19,732.

JAMES P. ARMSTRONG, *Appellant*, V. THE BANKING TRUST
COMPANY and HARRY BEDELL, *Appellees*.

### SYLLABUS BY THE COURT.

1. DEED — *Warranty against Incumbrance — When Lien for Special
Assessments Attached.* Where special assessments against real es-
tate have been declared void, but are subsequently relevied, they do
not constitute an incumbrance which relates back to the original levy
so as to come within a covenant of warranty against incumbrances
which was entered into subsequent to the first levy and before the
relevy.

2. SAME. In an action to recover for breach of a covenant against in-
cumbrances, it was shown that in 1902 the city of Kansas City levied
special taxes against the real estate for local improvements, the
assessments being payable in ten annual installments. After
they were levied and before any installments were paid, the assess-
ments were declared void and their collection enjoined. On March 24,
1912, subsequent to the conveyance of the land to plaintiff, the city re-
levied the assessments under the provisions of section 993 of the Gen-
eral Statutes of 1909. *Held*, the real estate was subject to reassess-
ment of the taxes, which made them in a strict sense an incumbrance,
yet they did not become an incumbrance in the sense contemplated
by the covenant until they became a lien by virtue of the relevy.

Appeal from Wyandotte district court, division No. 2; E.
RAY ADAMS, judge *pro tem.* Opinion filed December 11, 1915.
Affirmed.

*R. O. Douglas,* and *R. H. Worline,* both of Kansas City, for
the appellant.

*William B. Sutton,* and *William B. Sutton, jr.,* both of Kan-
sas City, for the appellees.

The opinion of the court was delivered by

PORTER, J.: This is an action to recover for breach of a cov-
enant against incumbrances. The defendants' motion for judg-
ment on the pleadings was sustained and plaintiff appeals.

The petition alleged an agreement to procure for the plain-
tiff the title to certain real estate "free from all incum-
brances," payment by plaintiff of the purchase money, and
that when title was conveyed, the real estate, consisting of a
residence lot in Kansas City, was subject to the payment of

special improvement taxes and interest, which constituted a prior lien and incumbrance thereon and which plaintiff was compelled to pay. The facts respecting the levy of the taxes for special improvements as shown by the pleadings are these: In 1902 the city of Kansas City caused Garfield avenue, upon which the property abuts, to be graded, curbed and paved, and assessed the costs of the improvement against the abutting property, the special assessments being payable in ten annual installments. After they were levied and before any installments had been paid, the court of common pleas of Wyandotte county perpetually enjoined their collection. On March 24, 1912, subsequent to the transfer of the title to the plaintiff, the city by ordinance relevied the assessments under the curative act. (Gen. Stat. 1909, § 993.)

The sole question for determination is whether the special assessments thus relevied were an incumbrance on the property when the title passed to plaintiff. Stated in another way the question is: Where special assessments have been declared void, but are subsequently relevied, do they constitute an incumbrance on the property which relates back to the defective levy?

We are unable to agree to the contentions of counsel for the plaintiff, although they have been ably presented both at the oral argument and in what may be termed a model brief.

Under the provisions of sections 9391 and 9392 of the General Statutes of 1909, taxes become a lien on the first day of November in the year in which the tax is levied, and as between grantor and grantee, where there is no express agreement as to which shall pay the taxes, the grantee must pay when the conveyance is made between March 1 and November 1, and the grantor when the conveyance is made between the first day of November and the first of March.

In *Tull v. Royston*, 30 Kan. 617, 2 Pac. 866, it was held that a tax or assessment for a sidewalk was not an incumbrance on the property until it became a lien on the first day of November of the year in which the assessment was levied. That was an action upon a covenant which warranted the property "free and clear of all taxes, liens, and incumbrances of whatever nature or kind soever."

It does not seem practical nor reasonable to regard anything

in the nature of a tax or assessment as constituting an "incumbrance" within the contemplation of the parties to such a covenant, unless it consisted of some charge against the property which the grantor was either in duty bound to pay, or which was payable. If it was not a lien, it was not an incumbrance. (*Tull v. Royston,* supra.) The special assessments in this case no longer appeared on the tax rolls; the officers were enjoined from accepting them; and there was no possible way by which the grantor could by payment have released or satisfied them.

Conceding that from the time the first proceedings were declared void, the duty rested upon the city to relevy the assessments, and that the real estate was during all this time subject to the imposition of these taxes, still we do not think it can be said that this liability was, in a strict sense, an incumbrance; it never became an incumbrance in the sense contemplated in the covenant until proper steps were taken to create a lien. The courts have not hesitated to adopt "the rule of reason" in construing covenants against incumbrances, and have often recognized a distinction between incumbrances which are such in a strictly literal exactness, and those which, from the nature of the contract, the situation of the parties, and their evident intent at the time it was made, appear not to have been in contemplation.

It sometimes happens that before the actual work of constructing the improvement has begun, the cost is apportioned and assessed against the abutting property. In such a situation it has been held that a contract to convey free of all incumbrances does not require the vendor to pay assessments for local improvements in advance of the execution of the work, for the reason that while such assessments constitute incumbrances in a strict sense, they are not such as were contemplated by the contract. (*Gotthelf v. Stranahan,* 138 N. Y. 345, 34 N. E. 286, 20 L. R. A. 455.) In the opinion it was said:

"The contract to convey free from incumbrances ordinarily has reference to incumbrances or liens actually existing when the contract is executed, or thereafter created, or suffered by the act or default of the vendor. While the assessments in question constituted, under the charter of Brooklyn, liens on the lands assessed from the time of their confirmation by the common council, and are, in a strict sense, incumbrances thereon, we are of opinion that they are not incumbrances within the meaning of the contract." (p. 351.)

Armstrong v. Trust Co.

There is a conflict in the authorities on the question whether the time when a tax becomes due and payable under the statute necessarily fixes the time when it becomes a lien. (See cases cited in Note, 37 Cyc. 1142.) In *Jacobs v. Union Trust Co.*, 155 Mich. 233, 118 N. W. 921, it was held that as between a vendor and vendee of land, in the absence of express statutory provision, a lien upon land for unpaid taxes does not exist until the amount thereof has been ascertained and has become a charge which may be discharged by payment, and this is at the time when the tax rolls come to the hands of the receiver of taxes, and not when the property is listed for assessment. This appears to be the general rule in the absence of a statute, that is to say, the lien ordinarily attaches as soon as the amount of the tax is definitely fixed and liability for its payment commences.

There is also a conflict of authorities on the question whether, where a special assessment is vacated and a reassessment made, the lien attaches as of the date of the original assessment. But the general rule is thus stated in 11 Cyc. 1114, under the title "Covenants":

"The circumstances under which a tax or special assessment lien attaches so as to render a grantor liable on his covenant against encumbrances are completely controlled by the statute law of the various states."

*Tull v. Royston,* 30 Kan. 617, 2 Pac. 866, is cited in the note to the effect that a special assessment is not an incumbrance until the lien actually attaches as defined by sections 9391 and 9392 of the General Statutes of 1909. The case of *Gilmore, County Clerk, v. Hentig,* 33 Kan. 156, 5 Pac. 781, involved the question when special assessments for a sewer became a fixed lien upon property in the benefited district. Notwithstanding the special taxes had been levied, the court said in the opinion:

"Under the laws of Kansas these taxes could not become a fixed and established charge or lien upon the property taxed prior to November 1, 1883, when the tax books are required by law to be delivered to the county treasurer to enable him to collect the taxes." (p. 172.)

While the courts are divided upon the precise question which we have to determine in the present case, we think the position taken by the court in the Royston case, *supra,* is controlling, and

that the relevy of the special assessments did not make the vendor in this case liable under the covenant against incumbrances.

Every day contracts are made for the conveyance of real estate which is liable for future payments of assessments for special improvements already constructed. The assessments are payable in annual installments running usually in ten-year periods. These assessments constitute, in a strict sense, incumbrances on the land to the extent of the installments unpaid. The vendor, in the absence of any agreement, is liable of course for the payment of all overdue installments. He is also liable for the installment of the current year, provided the conveyance is made on or after November 1, because the maturing installment has ripened into a tax. But his covenant of warranty against incumbrances would not oblige him to rebate the purchase price to the extent of future installments. Those payable in the future, though strictly incumbrances on the land, are not such as diminish the value of the subject of the contract. The vendee who is to enjoy the benefit of the improvements during the remainder of the installment period ought to pay them, and therefore, though incumbrances in a strict sense, they are not so within the fair and reasonable construction of the covenant.

These reasons may not apply in all respects to the case at bar, because it is not so clear that the burden of discharging the assessments can be said not to diminish to some extent the value of the land conveyed. On the other hand, if it were held that special assessments for local improvements constitute an incumbrance in the sense contended for by the plaintiff, it would in effect overrule the decision in *Tull v. Royston,* 30 Kan. 617, 2 Pac. 866, and it would necessarily follow that in all cases special assessments of this kind, although not due or payable except by yearly installments, are incumbrances for the payment of which the vendor who warrants against incumbrances generally would be liable.

The judgment is affirmed.