(No. 5087.   April 19, 1929.)

G. K. HUNT, Appellant, v. GEORGE A. BREMER and WILLIAM A. PETERS, Respondents.

[276 Pac. 964.]

Frank L. Stephan and E. D. Reynolds, for Appellant.

492

A. B. Barclay, for Respondents.

ADAIR, District Judge.—Appellant owned Block A-188 of Jerome Townsite, and had purchased and paid for a water right for the irrigation of the tract, which water right was evidenced by a contract describing and appurtenant to the entire block. He subdivided this block into 14 lots, and thereafter agreed to sell and respondents agreed to buy two of such lots, the contract providing that upon completion of payments the vendor should make and deliver to the vendees a good and sufficient deed with title free and clear of incumbrances. Upon default in payments, appellant tendered a deed and demanded performance of the contract, and thereafter brought this action to foreclose respondents' rights under the contract and recover deficiency, if any, thereunder.

The defense interposed was that because the water contract was appurtenant to all other lots in the block, as well as the two described in the deed, this constituted an incumbrance, since the canal company refuses to deliver any water to any of said lots unless the annual maintenance charges on the entire water contract are paid in advance, and that, therefore, respondents may in the future be required to pay maintenance on the entire water right in order to get water for their lots, or, in default thereof, suffer a lien to be created against their property if the co-owners of such water right should refuse to pay their proportionate share.

All taxes and maintenance charges theretofore levied against the land and water right were fully paid at the time the deed was tendered. The entire block comprises 3.2 acres and in the past the water maintenance charges have approximated 85 cents per acre, which amount varies from year to year, being determined by the operating expenses which are prorated among the various water users under the system. This appeal is from a decree adjudging that the title tendered was not free and clear of incumbrance and dismissing the action.

■ ■ The contract for the sale and purchase of the land specifically provided for the delivery of a deed to lots 13 and 14. Nowhere in the agreement was there any clause or stipulation for the conveyance or reservation of any water right. A deed conveying these lots, together with appurtenances, would also transfer all water rights appurtenant thereto at the time of its execution. (*Koon v. Empey,* 40 Ida. 6, 231 Pac. 1097; *Paddock v. Clark,* 22 Ida. 498, 126 Pac. 1053; *Russell v. Irish,* 20 Ida. 194, 118 Pac. 501.) A division of a tract of land to which water is appurtenant, without segregating or reserving the water right, works a division of such water right in proportion as the land is divided. (*Russell v. Irish, supra.*) The appellant owned an undivided one-seventh interest in the water evidenced by a certain water contract, and the transfer of the land to respondents would *ipso facto* transfer to them such right only as he had in this jointly owned water contract.

It appears that the irrigation company had refused, on demand, to divide this water contract into fractional parts or shares, due to the infinitesimal size of the water right, administrative and accounting difficulties, and inability to deliver water in such small quantities. Whether the company might legally be compelled, as urged here, to divide this contract is not now before this court for determination.

The sole question presented here is whether or not, under the foregoing state of facts, an incumbrance existed so as to relieve respondents from the obligations of their contract. "The term 'incumbrances' includes taxes, assessments, and all liens upon real property" (C. S., sec. 5385). "A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act." (C. S., sec. 6340.)

Aside from these statutory provisions, an incumbrance may otherwise be defined to be any right or interest in land to the diminution of its value, but consistent with the free transfer of the fee. It does not depend upon the extent or amount of diminution in value, but embraces all cases in which the owner does not acquire the complete dominion over the land which his grant apparently implies. (*Green v. Tidball*, 26 Wash. 338, 67 Pac. 84, 55 L. R. A. 879; 7 R. C. L. 1134, sec. 48.)

It is apparent that if an incumbrance is a right or interest which diminishes the value of the land, no easement or other right should be regarded as an incumbrance which is essential to its enjoyment and by which its value is enhanced. The modern trend, now firmly established, is that the existence of certain public easements, or easements beneficially affecting the land, such as a public road right of way (*Newmyer v. Roush*, 21 Ida. 106, Ann. Cas. 1913D, 433, 120 Pac. 464) or canal (*Schurger v. Moorman*, 20 Ida. 97, Ann. Cas. 1912D, 1114, 117 Pac. 122, 36 L. R. A., N. S., 313), do not constitute incumbrances within the meaning of covenants against incumbrances.

It was said in *Schurger v. Moorman, supra*, that "a purchaser of land is fully as chargeable with notice of the

existence of an irrigation canal on a tract of land he is about to purchase as he is chargeable with notice of the existence of a highway.'' This applies with equal force to a water right, which in the vicinity of Jerome is notoriously essential and necessary for the cultivation and occupancy of land. A water right is a valuable adjunct and complement of the land and enhances its value. That all irrigation projects must be maintained by the payment of the cost of delivery of water, and that this expense is met, under Carey Act projects, by annual assessments and tolls levied as expressly provided by statute is likewise a matter of common knowledge and imputable to the respondents when they contracted to buy these lots. They were charged with knowledge that the company operating this system annually collects these charges and that a lien may be created for failure to pay such assessments. It must be presumed that respondents entered into this contract with these facts in mind, and that it was the intention of all parties to the contract that they should assume this future liability. The fact that, as incident to every water right, there is a continuing duty to pay annual amounts for its protection and use does not depreciate the value of the land with which it is connected. Generally a lien, under a water contract, which may accrue at some future date, because of unpaid maintenance charges is not an incumbrance as defined by statute. The principle stated in the following cases is applicable: *Cramblitt v. Sherwood,* 109 Kan. 458, 199 Pac. 925; *White v. Immenschuh,* 106 Kan. 333, 187 Pac. 667; *Jaques v. Tomb,* 179 Cal. 444, 177 Pac. 280; *Bailey v. Levy,* 213 Ala. 80, 104 So. 415; *Griffin v. Kaufman,* 110 Kan. 182, 203 Pac. 924.

The laws of Idaho regulating Carey Act operating companies to provide for the levy of assessments and tolls and their collection, and that in default of payment the company may record notice of liens, and thereafter in a certain definitively prescribed manner foreclose the same. These assessments and tolls do not become liens until levied, and until the owners of water rights thereafter default in pay-

ment. In this case there were no unpaid assessments at the time of the tender of deed, and consequently no liens in existence against these lots. There could be no such liens until assessments were actually levied and due. The mere possibility that the other co-owners of this water contract might in the future fail to pay their allocated share of the maintenance charges did not constitute an incumbrance within the purview and meaning of the covenants in the contract and deed tendered.

In *Armstrong v. Banking Trust Co.*, 96 Kan. 722, Ann. Cas. 1918D, 972, 153 Pac. 507, a case dealing with the question of assessments payable annually for special improvements, it is said:

"The courts have not hesitated to adopt the 'rule of reason' in construing covenants against incumbrances, and have often recognized a distinction between incumbrances which are such in a strictly literal exactness and those which from the nature of the contract, the situation of the parties, and their evident intent at the time it was made, appear not to have been in contemplation. . . . . The vendee who is to enjoy the benefits of the improvements during the remainder of the installment period ought to pay them, and therefore, though incumbrances in a strict sense, they are not so within the fair and reasonable construction of the covenant."

This rule of reason is particularly applicable here. While one might conjure up a contingent possibility of an incumbrance in a strictly literal sense, when the situation of the parties, their evident intent, and all the surroundings are considered, a fair and reasonable construction of the covenant in question impels us to hold that, in this particular case, there was no such incumbrance as would justify the judgment appealed from. It would seem that respondents, as an excuse for their failure to perform their contract have, to borrow the language of Mr. Justice Ailshie in *Schurger v. Moorman, supra,* "hatched up a purely technical and imaginary objection to the title offered them," and it does

not appear "that the controversy was in good faith or supported by either reason or authority."

The judgment is reversed with instructions to proceed in accordance with the views herein expressed.

Costs awarded to appellant.

Budge, C. J., Givens and Wm. E. Lee, JJ., and Baker, D. J., concur.