# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43848

BRENT REGAN and MOURA REGAN, )
husband and wife, )
)
    Plaintiffs-Appellants, )
)
v. )
)
JEFF D. OWEN and KAREN A. OWEN, )
husband and wife, )
)
    Defendants-Respondents. )
_____ )

Boise, December 2017 Term

2018 Opinion No. 19

Filed: March 5, 2018

Karel A. Lehrman, Clerk

_____

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

The judgment of the district court is <u>vacated.</u>

Macomber Law, PLLC, Coeur d'Alene, for appellants. Arthur B. Macomber argued.

James, Vernon & Weeks, PA, Coeur d'Alene, for respondents. Susan P. Weeks argued.

_____

BRODY, Justice.

This case addresses whether the issuance of a tax deed extinguishes a prescriptive easement across a parcel of land by operation of former Idaho Code section 63-1009. The Owens purchased a small parcel of land ("the Orphan Parcel") from Kootenai County after a tax sale. A dispute arose as to whether the Regans had the right to drive across the Orphan Parcel. The Regans sued the Owens to reform the tax deed to include an express easement and to establish a prescriptive easement.

The district court granted summary judgment in favor of the Regans, ruling that the Owens' deed contained a mutual mistake and should be reformed to reflect an express easement that the original grantors intended. The Owens appealed and this Court held that the deed should not be reformed. We vacated a portion of the district court's judgment and remanded the case for further proceedings. *Regan v. Owen*, 157 Idaho 758, 339 P.3d 1162 (2014) ("*Regan I*"). On

1

remand, the district court granted summary judgment in favor of the Owens, finding that any prescriptive easement was extinguished by Idaho Code section 63-1009, which provides that tax deeds convey property free of all "encumbrances." The Regans timely appealed. After they filed their appeal, the Idaho Legislature amended Idaho Code section 63-1009. 2016 Idaho Sess. L. ch. 273, § 7, p. 758. On September 8, 2017, this Court released its original decision in this appeal. We thereafter granted the Regans' petition for rehearing. We vacate the judgment entered in favor of the Owens and remand this case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of this case are set forth in *Regan I*. 157 Idaho 758, 760–61, 339 P.3d 1162, 1164–65 (2014). There, we held that the Regans' claim was not barred by the statute of limitations. *Id.* at 762, 339 P.3d at 1166. We also held that the district court erred in reforming the Owens' deed and concluding, on inadequate evidence, that the Regans had a prescriptive easement over the Orphan Parcel. *Id.* at 763–64, 339 P.3d at 1167–68. Accordingly, the case was remanded to the district court. *Id.* at 765, 339 P.3d at 1169.

On remand, the Owens filed a third motion for summary judgment, alleging that the Regans' prescriptive easement claim was extinguished by issuance of the tax deed. The motion was based on the last paragraph of this Court's decision in *Regan I* which stated:

> The tax deed conveyed to the county absolute title to the Orphan Parcel "free of all encumbrances except mortgages of record to the holders of which notice has not been sent as provided in section 63-1004, Idaho Code, any lien for property taxes which may have attached subsequently to the assessment and any lien for special assessments. I.C. § 63-1009. An encumbrance is "any right or interest in land to the diminution of its value, but consistent with the free transfer of the fee." *Hunt v. Bremer*, 47 Idaho 490, 494, 276 P. 964, 965 (1929). Whether something is an encumbrance does not depend upon the extent to which it diminishes the value of the land. An encumbrance "embraces all cases in which the owner does not acquire the complete dominion over the land which his grant apparently implies." An easement is not an encumbrance if the easement is essential to the enjoyment of the land and it enhances the land's value. *Id.* There is no finding by the district court that the alleged prescriptive easement across the Orphan Parcel increased its value.

*Regan I*, 157 Idaho at 765, 339 P.3d at 1169.

A hearing was held and the district court issued a written decision granting the Owens' motion. The court concluded that the plain language of Idaho Code section 63-1009, together with the definition of "encumbrances" and interpretation of section 63-1009 in *Regan I*, required the court to conclude that any claim the Regans had to a prescriptive easement over the Orphan

Parcel was extinguished when the tax deed was issued. Accordingly, the district court entered judgment in favor of the Owens.

On March 30, 2016, several months after the Regans filed their appeal, Governor Otter signed Senate Bill 1388 into law. Section 1 of Senate Bill 1388 contains a lengthy statement of legislative intent wherein this Court's decision in *Regan I* is mentioned by name and the district court's subsequent determination that Idaho Code section 63-1009 extinguished the Regans' private access easement is expressly rejected. 2016 Idaho Sess. L. ch. 273, § 1, p. 750. Section 1 further declares: "[a]s its context should have made evident, the purpose of Section 63-1009, Idaho Code, . . . has always been to convey title absolutely free and clear of liens and mortgages of a monetary nature." *Id*. Senate Bill 1388 amended Idaho Code section 63-1009 to remove the reference to "encumbrances" and to more clearly state that the title conveyed by tax deed is the same as that of the "record owner." As amended, Idaho Code section 63-1009 now provides:

> EFFECT OF TAX DEED AS CONVEYANCE. The deed conveys to the grantee the right, title, and interest held by the record owner or owners, provided that the title conveyed by the deed shall be free of any recorded purchase contract, mortgage, deed of trust, security interest, lien, or lease, so long as notice has been sent to the party in interest as provided in sections 63-201(17) and 63-1005, Idaho Code, and the lien for property taxes, assessments, charges, interest, and penalties for which the lien is foreclosed and in satisfaction of which the property is sold.

I.C. § 63-1009 (2016).

## II.    STANDARD OF REVIEW

"This Court reviews summary judgment using the same standard as the court that originally ruled on the motion." *State ex rel. Indus. Comm'n v. Bible Missionary Church, Inc.*, 138 Idaho 847, 849, 70 P.3d 685, 687 (2003). "[S]ummary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 544, 314 P.3d 593, 599 (2013) (internal quotations omitted).

"[T]he interpretation of a statute is a question of law over which this Court exercises free review." *Insight, LLC v. Gunter*, 154 Idaho 779, 783, 302 P.3d 1052, 1056 (2013). "Constitutional issues are questions of law also subject to free review by this Court." *Brewer v. La Crosse Health & Rehab*, 138 Idaho 859, 862, 71 P.3d 458, 461 (2003).

## III.    ANALYSIS

**A. The district court erred in determining that the Regans' prescriptive easement was an encumbrance extinguished by the tax sale of the Orphan Parcel.**

**1. The district court was not bound by dicta in *Regan I*.**

Before addressing the interpretation of Idaho Code section 63-1009 and whether the issuance of a tax deed extinguishes a prescriptive easement, it is necessary to address whether the Court's definition of "encumbrance" in *Regan I* has become the "law of the case." This Court first explained the "law of the case" doctrine in *Suitts v. First Sec. Bank of Idaho,* 110 Idaho 15, 713 P.2d 1374 (1985). This doctrine requires that when "the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law *necessary to the decision*, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal . . . ." 110 Idaho at 21, 713 P.2d at 1380 (emphasis added) (quoting *Fiscus v. Beartooth Elec. Coop., Inc.,* 180 Mont. 434, 437, 591 P.2d 196, 197 (1979)). The law of the case is a well-established doctrine that is intended to avoid relitigating issues that have already been decided, and it functions much like stare decisis. *Frazier v. Neilsen & Co.*, 118 Idaho 104, 106, 794 P.2d 1160, 1162 (Ct. App. 1990).

The Court's discussion of Idaho Code section 63-1009 and *Hunt v. Bremer* in *Regan I* was dicta—it was not necessary to the decision. The Court concluded that the district court erred in finding the existence of a prescriptive easement when there were no findings as to width of the easement or that the easement had been established by clear and convincing evidence. *Regan I*, 157 Idaho at 765, 339 P.3d at 1169. This Court appears to have raised the issuance of the tax deed and the definition of the word "encumbrance" on its own accord in the last paragraph of the decision. This statement of the law was not necessary to the decision of whether the district court's grant of summary judgment in favor of the Regans was error, and, as such, it was dicta.

After the case was remanded, the parties litigated the meaning of "encumbrance" in connection with the Owens' third motion for summary judgment. The district court granted the Owens' motion in large part because it viewed this Court's discussion of *Hunt v. Bremer* as mandatory "guidance" which must be followed. To be sure, the district court was in a difficult position because the effect of the Court's discussion of *Hunt v. Bremer* was unclear. Even today the justices who have heard this appeal do not agree on the effect of the *Hunt v. Bremer* discussion. When this Court issued "guidance" in *Urrutia v. Blaine County*, 134 Idaho 353, 359, 2 P.3d 738, 744 (2000), the decision expressly stated that the Court was doing so: "We will therefore address the remainder of the arguments presented by the County on appeal for the

4

purpose of providing guidance on remand. In *Price v. Payette County Board of Commissioners*, 131 Idaho 426, 431, 958 P.2d 583, 588 (1998), the decision contained virtually identical language: "We will address the remainder of the arguments presented by Price on appeal for the purpose of providing guidance on remand." In *K. Hefner, Inc. v. Caremark, Inc.*, 128 Idaho 726, 731, 918 P.2d 595, 600 (1996), the Court stated: "we will address this issue to provide guidance to the district court on remand." It is important to recognize that the Court's decision in *Regan I* contained no such language. Without language indicating that we are providing guidance or directions that we intend to be followed on remand, dicta is not binding authority. As such, it is proper to take up the issue of whether the issuance of a tax deed extinguishes a prescriptive easement under Idaho Code section 63-1009.

**2. The term "encumbrance" as used in Idaho Code section 63-1009 is limited to financial interests.**

It appears section 63-1009 has been the law in Idaho since 1887. It "appears" because record keeping related to laws passed prior to that time was less than ideal and sometimes mistakes in indexing and updating occurred. Suffice it to say, 1887 is the date that it is clear that the law existed. Section 63-1009 has been re-codified over the years as the laws passed by the Idaho Legislature have expanded, but the statute has basically remained the same for nearly 130 years. The law when it was originally passed read as follows:

> The deed conveys to the grantee the absolute title to the lands described therein, free of all incumbrances, except any lien for taxes which may have attached subsequently to the assessment.

Rev. St. § 1557 (1887).

In 1932, the Legislature added the provision that a mortgage is not extinguished by a tax deed unless the mortgage holder was given notice of the proposed sale. The statute was changed to read:

> The deed conveys to the grantee the absolute title to the land described therein, free of all encumbrances except mortgages of record to the holders of which notice has not been sent as provided in section 61-1027 and except any lien for taxes which may have attached subsequently to the assessment.

I.C.A. § 61-1032 (1932). The only other part of the statute that changed in 1932 was the spelling of the word "incumbrance". It went from "incumbrance" to "encumbrance" to reflect the more modern spelling preference. The statute remained the same from 1932 until the Legislature modified it in 2016 in response to *Regan I*.

5

What does the term "encumbrance" mean and does it include a prescriptive easement? In *Regan I*, the Court answered these questions by using a definition articulated in *Hunt v. Bremer*, 47 Idaho 490, 494, 276 P. 964, 965 (1929). In *Hunt*, an encumbrance was defined as "any right or interest in land to the diminution of its value, but consistent with the free transfer of the fee. It does not depend on the extent or amount of diminution in value, but embraces all cases in which the owner does not acquire the complete dominion over the land which his grant apparently implies." *Id.*

The *Hunt* case did not address the meaning of the term "encumbrance" in the context of the tax deed statute. In *Hunt* a landowner divided a parcel into 14 lots. *Id.* at 492, 276 P. at 964. There was one water right that was shared among all of the lots, and the irrigation company refused to split the right into fractional shares. *Id.* at 493, 276 P. at 965. The landowner sold two of the lots to a single purchaser on contract. *Id.* at 492, 276 P. at 964. The purchaser defaulted and argued as a defense that the landowner had failed to deliver good title because the water contract was an encumbrance. *Id.* at 492–93, 276 P. at 964–65. The purchaser argued that the irrigation company could place a lien on all of the lots for any one owner's failure to pay his fractional share of the maintenance costs. *Id.* at 493, 276 P. at 964–65. The Court decided that a water right enhanced the value of the land and that a lien for unpaid maintenance charges that might accrue in the future was not an encumbrance for purposes of warranty of title. *Id.* at 495–96, 276 P. at 966. Again, the Court never examined the meaning of the term "encumbrance" as it was used in the tax deed statute.

To understand what "encumbrance" means in the tax deed statute it is important to understand the history of the law. In 1885, the Legislature authorized the formation of a three-person commission to revise, simplify, arrange, and consolidate all statutes of the Territory. *See* Introduction, Rev. St. of Idaho Territory (1887). The 1887 Revised Statutes were the final work product of that commission. The Revised Statutes were organized into four parts: (1) the Political Code ("enactments relating to the machinery of government"); (2) the Civil Code (relating to personal and private rights and private property); (3) the Code of Civil Procedure (regulating civil procedure in the courts); and (4) the Penal Code (crimes, criminal procedure, the Territorial prison, and county jails). *Id.*

The Revised Statutes had general provisions which applied to the laws in all four codes. Section 15 of the general provisions set forth how statutes were to be interpreted. It stated:

> Words and phrases are construed according to the context and the approved usage of the language, but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law, or are defined in the succeeding section, are to be construed according to such peculiar and appropriate meaning or definition.

Rev. St. § 15 (1887). This provision is still part of Idaho law today. *See* I.C. § 73-113(3) (setting forth rules of construction for statutes).

The term "incumbrance" is a word that has acquired a "peculiar and appropriate" meaning in law. Under section 15 of the general provisions, the word should be given its "peculiar and appropriate" legal meaning or the meaning that has been provided by the legislature in a "succeeding section." The tax deed statute appeared in Title X of the Political Code which was titled "Revenue." Title X was broken down into eleven chapters. Chapter VII, titled "Collection of Property Taxes," is where the tax deed statute was codified. There was no definition of the word "incumbrance" in the code section that followed the tax deed statute or in Title X or anywhere in the Political Code.

There was a definition of the term "incumbrance*s*" (emphasis on the plural) in Title VI of the Civil Code. See Rev. St. § 2936. Title VI, Chapter II of the Civil Code governed transfers of real property. Section 2935 codified a warranty of title that was implicit in every transfer of real property. One of the warranties was "[t]hat such estate is at the time of the execution of such conveyance free from incumbrance*s* done, made, or suffered by the grantor." Rev. St. § 2935(2) (emphasis added on the plural). Section 2936, the "succeeding section," then provided a definition of the word incumbrances: "The term 'incumbrances' includes taxes, assessments, and all liens upon real property." Rev. St. § 2936. The warranty of title provision and the subsequent definition of the term "incumbrances" still exist in Idaho law today. *See* I.C. §§ 55-612, 55-613. In fact, the Regans contend that the definition of "encumbrances" set forth in Idaho Code section 55-613 (which is identical to Rev. St. § 2936) should control this dispute.

The Court agrees that the term "encumbrance" should be narrowly construed to mean a financial interest such as a mortgage, judgment lien, assessment or tax, but the Court cannot take a definition of a word adopted by the Legislature in a completely different context (in this case it was originally adopted as part of an entirely different code) and necessarily apply it here. In addition, this Court has previously held that the definition of the term "encumbrances" in Idaho Code section 55-613 is inclusive, rather than exclusive, meaning that the law may recognize forms of encumbrances that are not listed in the statute. *See Hoffer v. Callister*, 137 Idaho 291,

7

294, 47 P.3d 1261, 1264 (2002). While the Court agrees the law takes us to the end result the Regans advocate, the route is different.

Since there is no applicable statutory definition of the term "incumbrance" and the word must be defined in its "peculiar and appropriate" legal sense, it is reasonable to consult a legal dictionary. Black's Law Dictionary at the time the tax deed statute was adopted defined the term "incumbrance" in the following ways:

> Any right to, or interest in, land which may subsist in third persons, to the diminution of the value of the estate of the tenant, but consistently with the passing of the fee. 8 Neb. 8; 2 Greenl. Ev. § 242.
>
> A claim, lien, or liability attached to property; as a mortgage, a registered judgment, etc.

Black's Law Dictionary (1st ed. 1891).

It is evident from these definitions that the word "encumbrance" can be construed in a general sense that could potentially encompass an easement (i.e., the *Hunt* definition stated in *Regan I*), and it can also be used in a narrower, more specific sense that means a financial interest (the definition advocated by Regans). If a word used in a statute is reasonably subject to more than one meaning, the statute is ambiguous, and the Court must construe the statute to mean what the Legislature intended. *Ada Cnty. Highway Dist. v. Brooke View, Inc.*, 162 Idaho 138, 142, 395 P.3d 357, 361 (2017). To determine the Legislature's intent, the Court must examine the words of the statute, the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history. *Id.* There is no legislative history to be found other than record of the tax deed statute's passage so the focus must be on the other factors.

In 1887, our Territory taxed real and personal property at the rate of 35 cents per one hundred dollars of assessed value. Rev. St. § 1410. The taxes assessed each year on both personal and real property were considered a judgment and became a lien upon the owner's real property. Rev. St. §§ 1412–14. The Territory taxed not only real property, but also water ditches, wagon toll roads, and telegraph lines. Rev. St. §1460. Railroads had a particularly noteworthy tax structure and were required to list for assessment their road-bed superstructure, rights of way and all structures thereon, rolling stock, side track, telegraph lines, furniture and fixtures, and other personal property. Rev. St. § 1463. The Territorial Board of Equalization was charged with valuing and assessing railroad property based on the number of miles of each road or line. *Id.*

8

The county assessors were responsible for assessing real property owned by railroads outside of the rights of way. *Id.*

When taxes became delinquent, the owner's real property upon which the taxes were a lien could be sold at public auction. Rev. St. § 1531. If there was no good faith purchaser after being put up for sale twice, then the property was "struck off" the Tax Collector's list to the county as the purchaser. Rev. St. § 1539. The Tax Collector had to issue the county a certificate of sale. Rev. St. § 1544. The owner of the real property had the right to redeem the property for at least one year, or up until the time the county disposed of it. Rev. St. §§ 1548, 1554. Once the redemption period expired, the Tax Collector had to issue a deed which mirrored the certificate of sale. Rev. St. §§ 1555–56. Once the deed was issued, the statute at issue came into play: "[t]he deed conveys to the grantee the absolute title to the lands described therein, free of all incumbrances, except any lien for taxes which may have attached subsequently to the assessment." Rev. St. § 1557.

The effect of tax deeds is something courts have wrestled with for years. The decisions are not in agreement and are driven in part by statutory provisions unique to each state. *See* Holly Piehler Rockwell, Annotation, *Easement, Servitude, or Covenant as Affected by Sale for Taxes*, 7 A.L.R. 5th 187 (1992); *see also* Annotation, *Easement or Servitude or Restrictive Covenant as Affected by Sale for Taxes*, 168 A.L.R. 529 (1947). One case that is particularly instructive in analyzing the issue is *Engel v. Catucci*, 197 F.2d 597 (D.C. Cir. 1952).

In *Engel*, the court explained that an easement is not an encumbrance in the ordinary sense and is actually carved out of the landowner's estate and becomes part of the easement user's property:

> It is true, as Engel and the District say, that in the District of Columbia a tax deed extinguishes all liens, encumbrances and equities in and upon the parcel conveyed. ***But an easement is an interest in land which has peculiar characteristics of its own, being neither an estate nor a lien, an encumbrance nor an equity, in the ordinary sense of those terms.*** An easement appurtenant to another lot, when created by conveyance, attaches to the possession of that other lot and 'follows it into whosesoever hands it may come.' ***The owner of the dominant estate owns the easement.*** So the owner of the servient estate cannot by conveyance strip that estate of an easement which has by prior conveyance become part of the property right of the possessor of another parcel of land, unless, of course, the conveyance by which the easement was created permits it. We refer to the Restatement of Property, Division V, Part I, for a full discussion of these underlying considerations. These special characteristics of an easement

9

appurtenant should carry through into the tax field. '(T)he appurtenant easement', as the Restatement says, 'presents a situation which calls for exceptional treatment.' An easement which lies upon one lot but is appurtenant to another lot is really part of the latter. It is carved out of the former. ***So it would appear that, when the servient lot is sold for taxes not paid upon it, the easement ought not to pass to the purchaser; the lot should pass subject to the easement, or, to express it another way, the lot less the easement should pass.***

*Id.* at 599–600 (emphasis added).

The *Engel* court's analysis makes sense in Idaho not only as it relates to appurtenant easements (i.e., those that are attached to the easement user's land), but also easements in gross (i.e., easements which belong to another person such as a utility company or railroad). In 1887, easement holders were actually taxed on their interests. Water ditches were taxed. Telegraph lines were taxed. Wagon toll roads were taxed. Railroad rights of way were taxed. In other words, the Territory had two sources of tax revenue. The Territory taxed the owner of the land where the easement was located and the holder of the easement. If we were to construe the tax deed statute to extinguish all easements, then we would also extinguish a source of revenue for the Territory and counties and deprive the easement holder of an important property interest without notice, compensation, or due process of law in the case of a recorded easement. That construction is unreasonable and is why the Court has concluded that the Legislature intended the term "encumbrance" to be construed narrowly in the sense of a financial interest. As such, it was error for the district court to enter summary judgment in favor of the Owens based on I.C. § 63-1009.

## IV. CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand the case for further proceedings that are consistent with this opinion. We award costs on appeal to the Regans.

Chief Justice BURDICK, Justices JONES and BEVAN CONCUR.


HORTON, J., dissenting.

I respectfully dissent from the Court's decision. "Where an appellate court reverses or vacates a judgment upon an issue properly raised, and remands for further proceedings, it may give guidance for other issues on remand." *Urrutia v. Blaine Cnty.*, 134 Idaho 353, 359, 2 P.3d 738, 744 (2000). Although the Court today holds that the discussion of the meaning of

encumbrance in *Regan I* was dicta, I disagree. The discussion was included to provide guidance to the trial court on remand. In my view, the district court properly applied the law as explained in *Regan I*.