# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40848-2013

BRENT REGAN and MOURA REGAN,      )
                                  )      Boise, April 2014 Term
    Plaintiffs-Respondents,      )
                                  )      2014 Opinion No. 135
v.                                )
                                  )      Filed: December 18, 2014
JEFF D. and KAREN A. OWEN,        )
                                  )      Stephen W. Kenyon, Clerk
    Defendants-Appellants.        )
                                  )

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County.  Hon. John P. Luster, District Judge.

The judgment of the district court is <u>vacated</u> and <u>remanded</u>.

Susan P. Weeks, James Vernon & Weeks P.A., Coeur d'Alene, argued for appellants.

Scott L. Poorman, Hayden, argued for respondents.

_____

EISMANN, Justice.

This is an appeal out of Kootenai County from a partial judgment reforming the deed of subsequent purchasers of real property based upon a finding that their predecessors in interest made a mutual mistake in drafting the legal description of the deed to the grantee. We vacate the judgment of the district court and remand this case for further proceedings.

## I.
### Factual Background.

The issue in this appeal is whether the deed of Jeff and Karen Owen should be reformed to grant an easement across their property for the benefit of Brent and Moura Regan. The Regans are the owners of a 50.55-acre parcel of land in Kootenai County. Adjoining their parcel to the east is a 10.7-acre parcel of land owned by Jeff and Karen Owen. The Owens' property was acquired by two separate conveyances. They acquired a 10.3-acre parcel from David and

Helen Hanna by a warranty deed dated February 4, 2003 (Owen Parcel), and they acquired a 0.4-acre parcel from Kootenai County by a deed dated November 28, 2005 (Orphan Parcel). The Orphan Parcel adjoins the northern boundary of the Owen parcel. The primary dispute in this appeal is whether the Regans have an easement across the Orphan Parcel.

These parcels now owned by the Regans and the Owens were part of several tracts of land in sections 27 and 34 of township 50 north, range 3 west, of the Boise Meridian, that were owned by BAR-ACH, Inc. On July 24, 1978, the corporation conveyed those tracts of land to Alexander H. Hargis, John W. Acheson, Jr., and R. C. Collins (herein called Original Grantors).[1] The Original Grantors later sold various parcels from the land acquired from the corporation. The sales relevant to this case were of parcels of land located in the southern part of section 27 and the northern part of section 34.

At the time of the conveyances of these parcels, there was a public road that ran in a north-south direction along the southern part of the north-south half-section line of section 27 and turned east at the section line between sections 27 and 34.[2] The Original Grantors intended to create a road and utility easement from the public road to the parcels, and they reserved a thirty-foot-wide easement for roadway and utility purposes along the southern boundary of each parcel in section 27 and along the northern boundary of each parcel in section 34. However, the proposed road was not a straight line. It began at about the north-south half-section lines of sections 27 and 34, with most of the road being in section 34. As it progressed west, it curved to the north into section 27 and then continued along the section line angling northerly.

There are two conveyances of property in section 27 along its southern border that are relevant to this appeal. Beginning at the north-south half-section line of section 27, the Original Grantors conveyed an 8.9-acre parcel to Patricia H. Hart by a warranty deed dated March 1, 1988. By a warranty deed dated June 2, 1989, the Original Grantors conveyed a 10-acre parcel of property to Robert and Debora Doney, which abutted the western boundary of the Hart parcel. Both deeds described the southern boundary of the respective parcels as being a line that would correspond to the centerline of the proposed road.

---

[1] R. C. Collins died in March of 1987, and the conveyances were made by one or both of the co-personal representatives of his estate. M. Eileen Acheson, the wife of John W. Acheson, Jr., also was a grantor in the deeds.

[2] Section 34 abuts section 27 to the north, so that the southern boundary of section 27 and the northern boundary of section 34 are the same section line.

There are three conveyances of property in section 34 along its northern boundary that are relevant to this appeal. By a warranty deed dated November 25, 1988, the Original Grantors conveyed to Harold and Jean Smart a 10.3-acre parcel, which was ultimately conveyed to the Owens and is the Owen Parcel. The legal description in the Smarts' deed described the northern boundary of the parcel as being the section line, not the centerline of the proposed road. The Original Grantors conveyed the parcel to the east of the Owen Parcel to Judith Johnson by a deed dated November 28, 1988. The legal description in her deed described the centerline of the proposed road as the northern boundary of her property. A parcel of land adjoining the Owen Parcel to the west was conveyed by a real estate contract dated September 18, 1989, to Leslie Jean Schunemann Marchelli as the trustee of the Leslie Jean Schunemann Marchelli Trust dated July 10, 1989. She later conveyed the property to the Regans by a warranty deed dated February 26, 1999.

The common boundary of the Hart and Doney parcels is north of the Owen Parcel. The centerline of the proposed road is very close to the northeast corner of the Owen Parcel, and from there the centerline proceeds at a slight northerly angle. Because the southern boundary of the Hart and Doney parcels is the centerline of the proposed road and the northern boundary of the Owen Parcel is the section line, the Original Grantors retained a small, triangularly shaped parcel of ground located between the Hart and Doney parcels in section 27 and the Smarts' parcel in section 34. In this litigation, the parties have called this 0.40-acre property the Orphan Parcel. Because the Original Grantors did not convey the Orphan Parcel, they did not reserve an easement across it as they did when they conveyed the other parcels.

The Original Grantors did not pay the real estate taxes assessed against the Orphan Parcel. As a result, on April 13, 2004, the county treasurer issued a tax deed conveying the parcel to Kootenai County. By deed dated November 28, 2005, the county conveyed the Orphan Parcel to the Owens.

In March 2010, there was a dispute between the Owens and the Regans as to whether the Regans had the right to drive across the Orphan Parcel. On March 11, 2011, the Regans filed this action to reform the Owens' deed to include an easement across the Orphan Parcel, to confirm their easement across the northern thirty feet of the Owen Parcel, and to establish a prescriptive easement across the Orphan Parcel. The Owens denied those claims and filed a counterclaim for trespass.

On August 14, 2013, the Regans filed a motion for summary judgment seeking a determination that they were entitled to have the Owens' deed reformed on the ground of mutual mistake. On September 5, 2012, the Owens filed a motion for summary judgment seeking a denial of the Regans' claim for reformation. The district court granted the Regans' motion and denied the Owens' motion. It held that the Regans' claim for reformation based upon a mutual mistake was not barred by the statute of limitations and that there was a mutual mistake between the Original Grantors and the Smarts as to the northern boundary of the parcel that the Smarts purchased. It also held that the Owens were on inquiry notice of that mistake when they purchased the Owen Parcel and later the Orphan Parcel. Finally, the court held that even if they did not have notice of the mistake, granting the Regans an easement across the Owens' property would not prejudice them. The Owens appealed, and the district court ultimately entered a partial judgment certified as final pursuant to Rule 54(b) of the Idaho Rules of Civil Procedure.

## II.
### Did the District Court Err in Holding that the Claim to Reform the Deed for Mutual Mistake was Not Barred by the Statute of Limitations?

The Owens contended that the claim to reform their deed based upon a mutual mistake was barred by Idaho Code section 5-218. It provides that an action for relief on the ground of fraud or mistake must be brought within three years of the discovery by the aggrieved party of the facts constituting the fraud or mistake. The statute of limitation does not begin to run until the aggrieved party, in the exercise of reasonable diligence, discovers the facts constituting the fraud or mistake. *Jemmett v. McDonald*, 136 Idaho 277, 279, 32 P.3d 669, 671 (2001); *Gerlach v. Schultz*, 72 Idaho 507, 514, 244 P.2d 1095, 1099 (1952).

The Owens contend that had the Original Grantors been exercising reasonable diligence, they would have recognized their mistake at the time they prepared the deed to the Smarts. The cause of action does not accrue when the party makes a mistake by failing to exercise reasonable diligence. It begins to run when the party discovers, or in the exercise of reasonable diligence should have discovered, the facts constituting the mistake.

For example, in *Brown v. Greenheart*, 157 Idaho 156, 335 P.3d 1 (2014), on January 29, 2007, the owners of real property conveyed it by a warranty deed, but the deed mistakenly failed to reserve the water rights appurtenant to the property. The grantors continued to exercise the

4

water rights, but on February 17, 2012, the grantee filed a notice of change in water right ownership with the Idaho Department of Water Resources. About two months later, the grantors filed an action to quiet their title in the water rights. The matter was tried to the court, and it "ruled that the evidence showed a mutual mistake was made by the parties when the warranty deed included unqualified appurtenances language." *Id.* at 161, P.3d at 5. The court reformed the warranty deed to reserve the water rights to the grantors. *Id.* On appeal, this Court held that the claim of mutual mistake was not barred by Idaho Code section 5-218. We rejected the grantee's argument that "a party is expected to realize the alleged fraud or mistake at the time of execution of a deed." *Id.* at 162, 335 P.3d at 7. We did so even though the deed granted the premises "with appurtenances," and under Idaho law it was "well established that a water right is an appurtenance to the land on which it has been used and will pass by conveyance of the land," *Russell v. Irish*, 20 Idaho 194, 198, 118 P. 501, 502 (1911). We upheld the trial court's finding that the cause of action did not accrue until the grantors met with an attorney, after the grantee asserted a claim to the water, and "were informed of the issue caused by the language 'with their appurtenances.'" *Brown*, 157 Idaho at 163, 335 P.3d at 8.

The Owens also contend that recorded surveys in 1979, 1986, 1989, and 1997, would have given the Regans notice of sufficient information to inquire as to whether there was a mutual mistake when the Smarts purchased their parcel. Assuming that a review of the surveys would have been sufficient to disclose that there may have been a mistake in the legal description of the Smarts' deed, none of those surveys were in the Regans' chain of title. "One claiming title to lands is chargeable with notice of every matter affecting the estate, which appears on the face of any recorded deed *forming an essential link in his chain of title . . . .*" *Kalange v. Rencher*, 136 Idaho 192, 196, 30 P.3d 970, 974 (2001) (emphasis added). Under no stretch of the imagination did the surveys form an essential link in the Regans' chain of title. The district court did not err in holding that the Regans' claim was not barred by the statute of limitations.

### III.
### Did the District Court Err in Reforming the Owens' Deed?

The district court held that there was a mutual mistake as to the northern boundary of the parcel being conveyed when the Original Grantors conveyed the Owen Parcel to the Smarts in 1988. However, that finding would not be sufficient to reform the Owens' deed to the Owen

5

Parcel. By a warranty deed dated November 2, 1994, the Smarts sold their property to Cheryl Anne Bower; by warranty deed dated April 16, 1997, she conveyed the property to David and Helen Hanna; and by warranty deed dated February 4, 2003, they conveyed the property to the Owens. There is no evidence, or even a contention, that Ms. Bower was mistaken as to the northern boundary of the property she purchased; that the Hannas were mistaken as to the northern boundary of the property they purchased; or that the Owens were mistaken as to the northern boundary of the property they purchased. A mutual mistake between the Original Grantors and the Smarts does not justify changing the deed of subsequent purchasers of the property.

The district court held that the Owens were not bona fide purchasers without notice when they purchased the Owen Parcel. In making that determination, the district court erred. First, there is no contention or evidence showing that Ms. Bower and the Hannas were not bona fide purchasers for value. "Once the right to have a mistake in a deed rectified is shut off by conveyance to a bona fide purchaser, a grantee from such purchaser is entitled to the same protection." 23 Am. Jur. 2d *Deeds* § 192 (2013).

Second, there is no evidence that the Owens were not bona fide purchasers of the Owen Parcel. The Regans had the burden of proving that the Owens were not bona fide purchasers. *Kalange*, 136 Idaho at 196, 30 P.3d at 974. To be bona fide purchasers, the Owens must have purchased the property in good faith for valuable consideration. *Sun Valley Hot Springs Ranch, Inc. v. Kelsey*, 131 Idaho 657, 661, 962 P.2d 1041, 1045 (1998). "Good faith means a party purchased the property without knowing of any adverse claims to the property." *Id*. That knowledge could be either actual or constructive. *Id*. Under the facts of this case, the Regans had the burden of proving that when the Owens purchased the Owen Parcel, they had actual or constructive knowledge that the Orphan Parcel should have been part of the property they were purchasing.

The district court determined that the Owens had notice when they purchased the Owen Parcel that the property they purchased should have included the Orphan Parcel, but for a mistake when the Smarts purchased the Owen Parcel. The court stated, "The evidence presented shows that the Owens, by virtue of the legal description in the chain of title, had actual notice that the northern boundary of the OWEN Parcel was located on the Section 27 line." That

6

finding is insufficient to show that the Owens had actual or constructive knowledge of the error in the Smart deed.

The court is simply finding that the Owens had knowledge of the legal description in the property they purchased. The court did not attempt to explain how the Owens' knowledge of the northern boundary of the Owen Parcel as described in their deed would be knowledge that there had been an error almost fifteen years earlier in failing to include additional land in the deed from the Original Grantors to the Smarts. The court apparently concluded that once it found that the Smart deed should have included land north of the section line, the Owens were not good faith purchasers because they knew that the northern boundary of their deed did not include property north of the section line. Notice of the mutual mistake in the Smart deed cannot be established based upon a conclusion that the Owens should have known in February 2003 what the court would later determine in November 2012.

"The purpose of the recording act in a race-notice jurisdiction, like Idaho, is to allow recorded interests to be effective against unrecorded interests when the recorded interest is taken for a valuable consideration and in good faith, i.e., without knowledge, either actual or constructive, that unrecorded interests exist." *Langroise v. Becker*, 96 Idaho 218, 220, 526 P.2d 178, 180 (1974). A purchaser of real property is "chargeable with notice of every matter affecting the estate, which appears on the face of any recorded deed *forming an essential link in his chain of title . . . .*" *Kalange*, 136 Idaho at 196, 30 P.3d at 974 (emphasis added). A purchaser is also chargeable with notice "of such matters as might be learned by inquiry which the recitals *in such instruments* made it a duty to pursue." *Id*. (emphasis added). There is nothing in the chain of title to the Owen Parcel that would provide constructive notice of an error made in the legal description of the deed to the Smarts. The Original Grantors were selling parcels from a larger tract of land. The chain of title would not show that the deed to the Smarts should have included more land than contained in the legal description. The Owens were not required to examine the legal descriptions of surrounding parcels of land owned by others to see if there was anything in those legal descriptions that could possibly affect the title to the parcel they were buying.

The Owens would also have notice of any claim to the property they were buying that would be revealed by a reasonable inspection of that property. *Langroise*, 96 Idaho at 220-21, 526 P.2d at 180-81. There is nothing indicating that a reasonable inspection of the Owen Parcel

would have revealed that it should have included more land than contained in its legal description.

The district court also found that the Owens were not good faith purchasers of the Orphan Parcel. It stated that the Owens had inquiry notice that there was an erroneous legal description in the deed given to the Smarts in 1988 because "the Owens knew by the time they purchased the Orphan Parcel in 2005 that the northern boundary of the OWEN Parcel was the Section 27 line and that no party claimed ownership to or paid taxes on the Orphan Parcel." Based upon that statement, the court held that "the OWENs were on inquiry notice in 2005 that the conveyance by the Original Owners to the Smarts may have contained an erroneous legal description." That statement is clearly wrong and insufficient to show actual or constructive notice of the error in the Smart deed.

The court's statement that "no party claimed ownership to . . . the Orphan Parcel" is contrary to the facts in the record. The Owens purchased the Orphan Parcel from Kootenai County. The County certainly claimed ownership of the parcel.

As stated above, when the Owens purchased the Orphan Parcel, they were "chargeable with notice of every matter affecting the estate, which appears on the face of any recorded deed *forming an essential link in his chain of title . . . .*" *Kalange*, 136 Idaho at 196, 30 P.3d at 974 (emphasis added). The chain of title would show that the Original Grantors owned the Orphan Parcel and that on April 14, 2004, a tax deed was recorded conveying the property to Kootenai County for the nonpayment of property taxes for the year 2000. The documents in the chain of title would not give constructive notice of any claim by the Regans to the Orphan Parcel or of any mistake in the Smart deed. There is no contention that the face of the tax deed would have put the Owens on inquiry notice of any defect in the proceedings leading to the issuance of the tax deed. The Owens were not under any obligation to inquire as to why the Original Grantors had failed to pay the property taxes assessed against the property.

The tax deed conveyed absolute title to the County free of encumbrances. Idaho Code section 63-1009 states:

> The [tax] deed conveys to the grantee the absolute title to the land described therein, free of all encumbrances except mortgages of record to the holders of which notice has not been sent as provided in section 63-1005, Idaho Code, any lien for property taxes which may have attached subsequently to the assessment and any lien for special assessments.

8

When the county received the tax deed to the Orphan Parcel, that cut off any claim to reform the Owen Parcel so that it included the Orphan Parcel. The county was at that point the absolute owner of the Orphan Parcel. When the Owens later purchased the Orphan Parcel, they received the title that the county had.

Finally, the district court held that the Owens would not be prejudiced by the reformation of their deed because they now own both the Owen Parcel and the Orphan Parcel. According to the court, "[t]he only issue, then, is the location of the Regans' easement over the Owens' collectively owned parcels." The court dismissed the Owens' "assertions of asthenic [sic] value and concerns regarding topography." The Regans have an express easement across the northern thirty feet of the Owen Parcel. The court did not cite any authority holding that a court can relocate the easement to another portion of the Owens' land merely because the court does not believe that doing so would prejudice them. We are likewise unaware of any such authority.

### III.
### Did the District Court Err in Stating that It Had Granted the Regans a Thirty-Foot Easement Across the Orphan Parcel?

In its memorandum decision, the district court stated that it "determined that the Regans enjoy a thirty-foot prescriptive easement that runs along the centerline of the proposed road." That statement could be construed as an alternative basis for upholding the court's partial judgment. No such finding or determination is included in the record on appeal, and the parties agree that the court's statement was in error. During the hearing on the Regans' motion for a preliminary injunction, the court stated, "I think that the Regans have established a likelihood that they would prevail on their claim for a prescriptive easement." However, the court never made a finding that they had established the easement by clear and convincing evidence. In addition, at the hearing the court did not make any finding as to the width of the easement. Thus, the court erred in its statement that it had determined that the Regans had a prescriptive easement along the centerline of the proposed road.

The tax deed conveyed to the county absolute title to the Orphan Parcel "free of all encumbrances except mortgages of record to the holders of which notice has not been sent as provided in section 63-1005, Idaho Code, any lien for property taxes which may have attached subsequently to the assessment and any lien for special assessments." I.C. § 63-1009. An

9

encumbrance is "any right or interest in land to the diminution of its value, but consistent with the free transfer of the fee." *Hunt v. Bremer*, 47 Idaho 490, 494, 276 P. 964, 965 (1929). Whether something is an encumbrance does not depend upon the extent to which it diminishes the value of the land. An encumbrance "embraces all cases in which the owner does not acquire the complete dominion over the land which his grant apparently implies." *Id*. An easement is not an encumbrance if the easement is essential to the enjoyment of the land and it enhances the land's value. *Id*. There is no finding by the district court that the alleged prescriptive easement across the Orphan Parcel increased its value.

## IV.
### Conclusion.

We vacate paragraphs 1 through 4 of the amended judgment, and we remand this case to the district court for further proceedings that are consistent with this opinion. We award appellants costs on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**