# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43848

BRENT REGAN and MOURA REGAN,
husband and wife,

      Plaintiffs-Appellants,

v.

JEFF D. OWEN and KAREN A. OWEN,
husband and wife,

      Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, April 2017 Term

2017 Opinion No. 98

Filed: September 8, 2017

Karel A. Lehrman, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

The judgment of the district court is affirmed.

Macomber Law, PLLC, Coeur d'Alene, for appellant. Arthur B. Macomber argued.

James, Vernon & Weeks, PA, Coeur d'Alene, for respondents. Susan P. Weeks argued.

_____

HORTON, Justice.

This case presents the issue whether a prescriptive easement across a parcel of land was extinguished by operation of former Idaho Code section 63-1009[1] when that parcel was sold by tax deed. The Owens purchased a small parcel of land ("the Orphan Parcel") from Kootenai County after a tax sale. A dispute arose as to whether the Regans had the right to drive across the parcel. The Regans sued the Owens to reform the tax deed to include an express easement and to establish a prescriptive easement.

The district court granted summary judgment in favor of the Regans, ruling that the Owens' deed contained a mutual mistake and should be reformed to reflect an express easement

[1] In 2016, in direct response to an earlier decision of this Court in this action, the Legislature passed Senate Bill 1388, which amended Idaho Code section 63-1009. As the bill carried an emergency clause, it took effect when the Governor signed the bill on March 30, 2016, 2016 Idaho Sess. L. ch. 273, §§ 7, 8, p. 758. Unless explicitly noted, all references in this opinion to Idaho Code section 63-1009 relate to the earlier version of the statute.

1

that the original grantors intended. The Owens appealed and this Court held that the deed should not be reformed, vacated a portion of the district court's judgment, and remanded for further proceedings. *Regan v. Owen*, 157 Idaho 758, 339 P.3d 1162 (2014) ("*Regan I*"). On remand, the district court granted summary judgment in favor of the Owens, finding that any prescriptive easement was extinguished by Idaho Code section 63-1009, which provides that tax deeds convey property free of all "encumbrances." The Regans timely appealed. After they filed their appeal, the Idaho Legislature amended Idaho Code section 63-1009. 2016 Idaho Sess. L. ch. 273, §§ 7, p. 758. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of this case are set forth in *Regan I*. 157 Idaho 758, 760–61, 339 P.3d 1162, 1164–65 (2014). There, we held that the Regans' claim was not barred by the statute of limitations. *Id.* at 762, 339 P.3d at 1166. We also held that the district court erred in reforming the Owens' deed and concluding, on inadequate evidence, that the Regans had a prescriptive easement over the Orphan Parcel. *Id.* at 763–64, 339 P.3d at 1167–68. Accordingly, the case was remanded to the district court. *Id.* at 765, 339 P.3d at 1169.

On remand, the Owens filed a third motion for summary judgment, alleging that the Regans' prescriptive easement claim was extinguished by issuance of the tax deed. A hearing was held and the district court issued a written decision granting the Owens' motion. The court concluded that the plain language of Idaho Code section 63-1009, together with the definition of "encumbrances" and interpretation of section 63-1009 in *Regan I* required the court to conclude that any claim the Regans had to a prescriptive easement over the Orphan Parcel was extinguished when the tax deed was issued. Accordingly, the district court entered judgment in favor of the Owens.

On March 30, 2016, several months after Regans filed their appeal, Governor Otter signed Senate Bill 1388 into law. Section 1 of Senate Bill 1388 contains a lengthy statement of legislative intent wherein this Court's decision in *Regan I* is mentioned by name and the district court's subsequent determination that Idaho Code section 63-1009 extinguished the Regans' private access easement is expressly rejected. 2016 Idaho Sess. L. ch. 273, § 1, p. 750. Section 1 further declares: "[a]s its context should have made evident, the purpose of Section 63-1009, Idaho Code . . . has always been to convey title absolutely free and clear of liens and mortgages of a monetary nature." *Id*. Senate Bill 1388 amended Idaho Code section 63-1009 to remove the

2

reference to "encumbrances" and to more clearly state that the title conveyed by tax deed is the same as that of the "record owner."[2] Finally, section 8 of Senate Bill 1388 declares: "Being a clarification of existing law, the Legislature does not view the application of this amendment to prior conveyances as retroactive legislation. In any event, the Legislature expressly intends that these amendments shall be interpreted to apply to any and all conveyances by tax deed, past or future." 2016 Idaho Sess. L. ch. 273, § 8, p. 758.

## II. STANDARD OF REVIEW

"This Court reviews summary judgment using the same standard as the court that originally ruled on the motion." *State ex rel. Indus. Comm'n v. Bible Missionary Church, Inc.*, 138 Idaho 847, 849, 70 P.3d 685, 687 (2003). "[S]ummary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Silicon Intern. Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 544, 314 P.3d 593, 599 (2013) (internal quotations omitted).

"[T]he interpretation of a statute is a question of law over which this Court exercises free review." *Insight, LLC v. Gunter*, 154 Idaho 779, 783, 302 P.3d 1052, 1056 (2013). "Constitutional issues are questions of law also subject to free review by this Court." *Brewer v. La Crosse Health & Rehab*, 138 Idaho 859, 862, 71 P.3d 458, 461 (2003).

## III. ANALYSIS

### A. The district court did not err in determining that the Regans' prescriptive easement was an encumbrance extinguished by the tax sale of the Orphan Parcel.

Prior to its amendment, Idaho Code section 63-1009 provided:

> The [tax] deed conveys to the grantee the absolute title to the land described therein, *free of all encumbrances* except mortgages of record to the holders of which notice has not been sent as provided in section 63-1005, Idaho Code, any lien for property taxes which may have attached subsequently to the assessment and any lien for special assessments.

---

[2] As amended, Idaho Code section 63-1009 now provides:

> EFFECT OF TAX DEED AS CONVEYANCE. The deed conveys to the grantee the right, title, and interest held by the record owner or owners, provided that the title conveyed by the deed shall be free of any recorded purchase contract, mortgage, deed of trust, security interest, lien, or lease, so long as notice has been sent to the party in interest as provided in sections 63-201(17) and 63-1005, Idaho Code, and the lien for property taxes, assessments, charges, interest, and penalties for which the lien is foreclosed and in satisfaction of which the property is sold.

I.C. § 63-1009 (2016).

(emphasis added).

In *Regan I*, this Court addressed the meaning of "encumbrance" in Section 63-1009:

> An encumbrance is "any right or interest in land to the diminution of its value, but consistent with the free transfer of the fee." *Hunt v. Bremer*, 47 Idaho 490, 494, 276 P. 964, 965 (1929). Whether something is an encumbrance does not depend upon the extent to which it diminishes the value of the land. An encumbrance "embraces all cases in which the owner does not acquire the complete dominion over the land which his grant apparently implies." *Id.* An easement is not an encumbrance if the easement is essential to the enjoyment of the land and it enhances the land's value.

*Regan I*, 157 Idaho at 765, 339 P.3d at 1169.

The district court determined, following the direction given in *Regan I*, that the plain language of Section 63-1009 "conveys absolute title free of all encumbrances" and that the legislature "delineated certain exceptions that do not apply." This was so regardless of the "inequitable or oppressive results" because "it is not the province of the trial court to rewrite the law or impose an application contrary to the clearly stated language."

The Regans assert that the language defining "encumbrance" in *Regan I* is dicta and relies on dicta from *Hunt*, 47 Idaho at 494, 276 P. at 965. The Regans also argue that the district court's interpretation of "encumbrances" in Idaho Code section 63-1009 to include private easements is poor public policy. The Regans champion a reading of Section 63-1009 that restricts encumbrances to financial interests, as contemplated by Idaho Code section 55-613.

"Statutory interpretation begins with the literal words of the statute, and this language should be given its plain, obvious and rational meaning." *Idaho Youth Ranch, Inc. v. Ada Cnty. Bd. of Equalization*, 157 Idaho 180, 184, 335 P.3d 25, 29 (2014) (internal citations and quotations omitted). "If the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction." *Id.* at 184–85, 335 P.3d 29–30.

Section 63-1009 expressly states that "the [tax] deed conveys to the grantee absolute title to the land . . . *free of all encumbrances*" with the exception of a few specifically delineated exceptions. (emphasis added). As both parties recognize, there is no ambiguity in the statute. The only question is whether "encumbrances" in Section 63-1009 includes private easements, such as the one at issue here. This question was largely answered in *Regan I*, when this Court defined encumbrance as "any right or interest in land to the diminution of its value, but consistent with

4

the free transfer of the fee" and declared that "[a]n easement is not an encumbrance if the easement is essential to the enjoyment of the land and it enhances the land's value." 157 Idaho at 765, 339 P.3d at 1169.

Thus, the prescriptive easement asserted by the Regans over the Orphan Parcel survives issuance of the tax deed only if the easement is essential to the enjoyment and enhances the value of the Orphan Parcel. In his affidavit in support of his Third Motion for Summary Judgment, Jeff Owen stated that the easement was not essential to his use or enjoyment and that it diminished the value of the Orphan Parcel. Additionally, the Regans and the district court cite deposition testimony from Brent Regan indicating that Regan "couldn't say" whether the easement over the Orphan Parcel increased the value of the Owens' land. However, the key inquiry is not whether the easement over the Orphan Parcel increased the value of the Owens' land, but rather, whether the easement increases the value of the Orphan Parcel itself. Brent Regan's deposition testimony is thus irrelevant, because it addresses the wrong question.

The easement over the Orphan Parcel did not increase the Orphan Parcel's value in such a way that it cannot be considered an encumbrance. The Kootenai County assessor indicated that the Orphan Parcel had been given a placeholder value from the time it was first assessed in 2000 and that placeholder values are typically given to "parcels that are unbuildable and to remainder parcels that are used for private roadways." In his opinion, "the [O]rphan [P]arcel did not appear to be a buildable lot and its utility was limited by the existing roadway running the length of the parcel." Because the utility of the Orphan Parcel lay in providing private access to surrounding parcels, its value was limited. There was no evidence presented to the district court that the Regans' prescriptive easement over the Orphan Parcel increased the Orphan Parcel's value. Thus, the district court correctly concluded that the easement was an encumbrance for purposes of Idaho Code section 63-1009 and was extinguished by issuance of the tax deed.

The Regans challenge the district court's application of our discussion of encumbrances in *Regan I* to this case, complaining that such language is dicta and contending that the definition in Idaho Code section 55-613, which defines encumbrances as including "taxes, assessments, and all liens upon real property" is more appropriate.

Although the encumbrance language in *Regan I* was not strictly necessary to the Court's holding in that case, we included it in order to provide guidance to the trial court on remand. "Where an appellate court reverses or vacates a judgment upon an issue properly raised, and

5

remands for further proceedings, it may give guidance for other issues on remand." *Urrutia v. Blaine Cnty.*, 134 Idaho 353, 359, 2 P.3d 738, 744 (2000). The guidance we offered for resolution of the issues on remand is controlling for disposition of the issues in this case.

**B. The current version of Section 63-1009 does not apply retroactively.**

Following its amendment in 2016, Idaho Code section 63-1009 now provides:

> The deed conveys to the grantee the right, title, and interest held by the record owner or owners, provided that the title conveyed by the deed shall be free of any recorded purchase contract, mortgage, deed of trust, security interest, lien, or lease, so long as notice has been sent to the party in interest as provided in sections 63-201(17) and 63-1005, Idaho Code, and the lien for property taxes, assessments, charges, interest, and penalties for which the lien is foreclosed and in satisfaction of which the property is sold.

Retroactive legislation refers to newly enacted statutes or amendments that affect vested or already existing rights. *Schoorl v. Lankford*, 161 Idaho 628, 629, 389 P.3d 173, 174 (2017). Because the amendments to Section 63-1009 became effective after the district court adjudicated the rights of the parties regarding the Orphan Parcel, and because the rights concerned— ownership and a claim to a prescriptive easement—were vested at the time of adjudication, application of the amendments to Section 63-1009 would be retroactive.

"[T]he restrictions that the [United States] Constitution places on retroactive legislation 'are of limited scope.' " *Bank Markazi v. Peterson*, 136 S.Ct. 1310, 1324 (2016) (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 267 (1994)).

> The *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation. Article I, § 10, cl. 1, prohibits States from passing . . . laws "impairing the Obligation of Contracts." The Fifth Amendment's Takings Clause prevents the Legislature (and other government actors) from depriving private persons of vested property rights except for a "public use" and upon payment of "just compensation." The prohibitions on "Bills of Attainder" in Art. I, §§ 9–10, prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct. See, *e.g., United States v. Brown*, 381 U.S. 437, 456–462 (1965). The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause "may not suffice" to warrant its retroactive application. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17 (1976).

*Landgraf, 511 U.S. at 266 (footnote omitted).* "Absent a violation of one of those specific provisions," when a new law makes clear that it is retroactive, the arguable "unfairness of

6

retroactive civil legislation is not a sufficient reason for a court to fail to give [that law] its intended scope." *Bank Markazi*, 136 S.Ct. at 1325 (quoting *Landgraf*, 511 U.S. at 267–68).

Similarly, in Idaho, legislation does not have retroactive effect in the absence of an express legislative statement of intent to that effect. I.C. § 73-101. "A statute should be applied retroactively only if the legislature has clearly expressed that intent or such intent is clearly implied by the language of the statute." *Guzman v. Piercy*, 155 Idaho 928, 938, 318 P.3d 318, 928 (2014) (quoting *Kent v. Idaho Pub. Utils. Comm'n*, 93 Idaho 618, 621, 469 P.2d 745, 748 (1970)). As with new legislative enactments, amendments to statutes are also not given retroactive effect unless there is an "express legislative statement to the contrary." *Id*. (citing *Nebeker v. Piper Aircraft Corp.*, 113 Idaho 609, 614, 747 P.2d 18, 23 (1987)). Thus, the applicability of the current version of Idaho Code section 63-1009 to the instant case depends on whether Senate Bill 1388 contains an express provision declaring the Legislature's intention that it apply retroactively.

Section 8 of Senate Bill 1388 provides that: "Being a clarification of existing law, the legislature *does not view the application of this amendment to prior conveyances as retroactive legislation.* In any event, the Legislature *expressly intends* that these amendments shall be interpreted to apply to any and all conveyance by tax deed, *past or future*." 2016 Idaho Sess. L. ch. 273, § 8, p. 758 (emphasis added). This statement does not convey with clarity the Legislature's intent that Senate Bill 1388 be applied retroactively—which is what the law requires. If the Legislature wished to clearly convey retroactive intent it could do so—and has in other instances. *See e.g.*, I.C. § 7-1107(2) ("This section shall apply retroactively . . . . ); 2016 Idaho Sess. L. ch.188, § 2, p. 512 ("[T]his act shall be in full force and effect on and after its passage and approval, and retroactively to January 1, 2016"); 2013 Idaho Sess. L. ch. 4, § 6, p. 13 ("Sections 1, 2, 4 and 5 of this act shall be in full force and effect on and after passage and approval, and retroactively to January 1, 2013"); *State v. Leary*, 160 Idaho 349, 353, 373 P.3d 404, 408 (2016) ("The Legislature clearly knows how to expressly declare retroactive effect when drafting a statute . . . ).

The Legislature's statement of how it viewed application of the amendment has no bearing on how this Court interprets it. Idaho Const. Article V, § 13 ("The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it . . . "). The Legislature is empowered to make laws, and this Court is empowered to interpret

them. *Holly Care Ctr. v. State Dept. of Emp't*, 110 Idaho 76, 82, 714 P.2d 45, 51 (1986). The Legislature's statement of how it "viewed" the amendment of Section 63-1009 in Senate Bill 1388 overstepped the constitutional limits of its power. It cannot direct this Court's interpretation of statutes. *State v. Barnes*, 55 Idaho 578, 588, 45 P.2d 293, 297 (1935) (Morgan, J., concurring) ("It is not, in the constitution, anywhere directed or permitting that the legislature, having enacted a law, shall dictate the interpretation or construction to be placed upon it"). Thus, this statement is of no effect in determining retroactivity of the amended statute.

Finally, neither of the parties seek retroactive application of the amendments to Section 63-1009. We see no reason to give relief that no party seeks. Accordingly, we hold that the amendments to Section 63-1009 have only prospective effect.

## C. The district court did not err in rejecting the Regans' due process argument.

The Regans argue that the district court erred in dismissing their prescriptive easement claim because they were denied due process of law because they did not receive notice of the pending issuance of the tax deed for the Orphan Parcel. This argument is based on *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), which held that the Due Process clause required more than notice of publication to a mortgagee of a pending tax sale on the mortgaged property.

Notice of the issuance of a tax deed is governed by Idaho Code section 63-1005, which requires that written notice by certified mail be served on "the record owner or owners and parties in interest of record" at their last known address no more than 5 months, but no less than 2 months prior to the tax sale. I.C. § 63-1005(2), (2)(a). A "party in interest" is "a person who holds a properly recorded mortgage, deed of trust or security interest." I.C. § 63-201(17).

The Regans claim that they are the holders of a valid prescriptive easement over the Orphan Parcel. A prescriptive easement is established by the continuous, uninterrupted, open and notorious use of property belonging to another—with their knowledge and without their permission—for the statutory period.[3] *Backman v. Lawrence*, 147 Idaho 390, 396, 210 P.3d 75,

---

[3] In 2006, the Legislature amended Idaho Code section 5-203 to extend the statutory possession period from five years to twenty years. 2006 Idaho Sess. L. ch. 158, § 1, p. 474; *see also Fuquay v. Low*, 162 Idaho 373, 377, 397 P.3d 1132, 1136 (2017) ("Under Idaho Code section 5-203, the statutory period is five years for prescriptive easement claims established prior to the amendment of the statute in 2006, or twenty years if established after the amendment.")

8

81 (2009). It is the use of the property that generates the right, not any official transaction or filing. Because of this, the county would likely not have had knowledge of the easement, even if it was valid. The Regans argue that whether the county knew of the easement is immaterial; the county should have provided notice of the tax deed issuance to all the surrounding property owners because it would only be a slight administrative burden and it would assure that the due process rights of those who may have an interest in the property would have their interests protected. This argument is unavailing. Idaho Code section 63-1005 requires notice of tax deed issuance to record owners or parties in interest. This statute is constitutionally sufficient under notice standard articulated in *Mennonite Board of Missions*.

Further, *Mennonite Board of Missions* requires notice by mail or other means to any affected party whose name and address are 'reasonably ascertainable' if such notice is not unduly burdensome. *Mennonite Bd. of Missions*, 462 U.S. at 799–800. However, here, the nature of the Regans' claim rendered their interest not readily ascertainable to the county. Thus, the district court did not err in dismissing the Regans' due process claim, because they were not record owners or parties in interest pursuant to Idaho Code 63-1005, nor was their identity as claimants readily ascertainable.

## D. Idaho Code section 55-603 does not conflict with Idaho Code section 63-1009.

The Regans assert that the district court erred in interpreting then-applicable Idaho Code section 63-1009 because the court's interpretation conflicts with other provisions which were not considered below, most notably Idaho Code section 55-603.

Idaho Code 55-603 declares that "[a] transfer of real property passes all easements attached thereto . . . in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred . . . at the time when the transfer was agreed upon or completed." The Regans contend that this rule—that easements pass with property conveyances—conflicts with the district court's reading of Idaho Code section 63-1009 that extinguished the Regans' prescriptive easement when the tax deed was issued.

Statutes pertaining to the same subject are construed, as far as reasonably possible, to be in harmony with one another. *Christensen v. West*, 92 Idaho 87, 88, 437 P.2d 359, 360 (1968). Here, the statutes in question can easily be read in harmony. Idaho Code section 55-603 declares the general rule that easements survive conveyances, whereas Idaho Code section 63-1009 is concerned with a specific exception to that rule—the issuance of tax deeds. Just as statutes must

9

be construed to be in harmony with one another when reasonably possible, when a conflict between statutes arises, the more specific statute will control. *Christensen*, 92 Idaho at 90–91, 437 P.2d at 362–63. Because the instant case involves the issuance of a tax deed, the district court correctly applied the more specific rule of Idaho Code section 63-1009.

**E.  The validity of the tax deed will not be considered for the first time on appeal.**

The Regans contend that the tax deed is void because the legal description of the Orphan Parcel in the tax deed does not meet the requirements of Idaho Code section 63-1006(6)(c). Specifically, the Regans argue that the Orphan Parcel tax deed does not include an acreage statement, block or lot numbers, a city plat description or a tax number. Idaho Code Section 63-1006(6)(c) requires that a tax deed contain "[a]n accurate description of the property using township, range, section and division of section, together with a statement as to acreage, or in the appropriate case, using block and lot numbers or as described in a city plat; and if appropriate, include the tax number."

Neither the sufficiency of the legal description nor the validity of the tax deed were challenged below. Because they were not raised below, this Court will not consider these issues for the first time on appeal. *See Row v. State*, 135 Idaho 573, 580, 21 P.3d 895, 902 (2001).

**F.  The Owens' request to receive a single tax assessment did not constitute relocation of the express easement.**

The Regans argue that the Owens' act to combine the taxes for their parcel and the Orphan Parcel into a single assessment served to relocate the Regans' express easement over the northern thirty feet of the Owen parcel. The Regans rely on Idaho Code section 55-313 for this argument, asserting that the Owens' request to combine their tax assessments amounted to relocating "access" by way of the easement. Section 55-313 provides that when "for motor vehicle travel, any access which is less than a public dedication, has . . . been . . . constructed across private lands, the person or persons owning or controlling the private lands shall have the right at their own expense to change such access to any other part of the private lands." I.C. § 55-313.

In addition to the prescriptive easement at issue here, in *Regan I*, this Court determined that the Regans had "an express easement across the northern thirty feet of the Owen Parcel." *Regan I*, 157 Idaho 758, 765, 339 P.3d 1162, 1169 (2014). The Regans misunderstand the combination of the parcels for tax purposes as combination of the parcels for all purposes. The

Regans essentially argue that because the Owens and Orphan Parcel have been combined that their express easement over the northern thirty feet of the Owens' parcel is now an easement over the Orphan Parcel, which is conveniently consistent with the Original Grantor's purpose as discussed in *Regan I*.

A close reading of the Owens' document requesting combination of the parcels for tax assessment purposes clearly indicates that the request is limited to combination of the parcels for tax assessment purposes only. The Owens' request for a single assessment bill did not constitute a relocation of the Regans' express easement over the Orphan Parcel—where use of the private access road had been hotly contested since 2010.

## G. Neither party is entitled to attorney's fees.

The Regans argue that they are entitled to costs on appeal pursuant to Idaho Code section 12-107 and Idaho Appellate Rule 40(a). They also seek attorney's fees on appeal under Idaho Code section 12-121, asserting that the Owens' arguments in response are frivolous. The Owens argue that they should be awarded attorney's fees under Section 12-121 for responding to several of the Regans' issues on appeal which they deem frivolous.

In *Hoffer v. Shappard*, 160 Idaho 868, 883, 380 P.3d 681, 696 (2016), this Court determined that Idaho Rule of Civil Procedure 54(e)(1), which interpreted Idaho Code section 12-121 to permit attorney's fees when a civil case was "brought, pursued or defended frivolously, unreasonably or without foundation," was no longer applicable. Instead, this Court looked to an uncodified provision of Idaho law which declared that "prevailing parties in civil litigation have to right to be made whole for attorney fees they have incurred 'when justice so requires.'" *Hoffer*, 160 Idaho at 883, 380 P.3d at 696. This Court determined that the new rule would to take effect March 1, 2017. *Id.* In the interim, the Idaho Legislature amended Idaho Code section 12-121 to mirror the language of the previous Idaho Rule of Civil Procedure 54(e)(1), with the express purpose of reinstating the law as it existed prior to *Hoffer*. 2017 Idaho Sess. L. ch. 47, §§ 1, 2, p. 75–76. Idaho Code section 12-121 now provides that: "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably, or without foundation." I.C. § 12-121.

We hold that neither the Owens nor the Regans proffered frivolous arguments on appeal. Because there was no frivolous conduct, no attorney's fees are awarded on appeal. Costs on appeal are awarded to the Owens as the prevailing party. I.A.R. 40(a).

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court and award costs on appeal to the Owens.

Chief Justice BURDICK and Justice EISMANN **CONCUR.**

BRODY, Justice, dissenting.

I respectfully dissent from the Court's decision today because I do not agree that a prescriptive easement is an "encumbrance" as that term is used in Idaho Code section 63-1009. The context in which the term "encumbrance" was used when Idaho Code section 63-1009 statute was originally passed makes it clear that the term "encumbrance" is being used in the statute in its narrow sense as a financial interest such as a mortgage, judgment lien, assessment or tax. While there is certainly support for the Court's interpretation of the statute and this case is a close call, the constitutional issues the Court's interpretation raises (the taking of a property interest without compensation or due process of law in case of an easement of record) lead me to resolve any doubt in favor of a narrow interpretation of the term "encumbrance."

Before addressing the interpretation of section 63-1009, it is necessary to address whether the Court's definition of "encumbrance" in *Regan I* has become the "law of the case." This Court first explained the "law of the case" doctrine in *Suitts v. First Sec. Bank of Idaho*, 110 Idaho 15, 713 P.2d 1374 (1985). This doctrine requires that when "the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law **necessary to the decision**, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal . . . ." 110 Idaho at 21, 713 P.2d at 1380 (quoting *Fiscus v. Beartooth Elec. Coop., Inc.,* 180 Mont. 434, 591 P.2d 196, 197 (1979)) (emphasis added). The law of the case is a well-established doctrine that is intended to avoid relitigating issues that have already been decided, and it functions much like stare decisis. *Frazier v. Neilsen & Co.*, 118 Idaho 104, 106, 794 P.2d 1160, 1162 (Ct. App. 1990).

The Court's discussion of Idaho Code section 63-1009 and *Hunt v. Bremer* in *Regan I* was dictum—it was not necessary to the decision. The Court concluded that the district court

erred in finding the existence of a prescriptive easement when there were no findings as to width of the easement or that the easement had been established by clear and convincing evidence. *Regan v. Jeff D.*, 157 Idaho 758, 765, 339 P.3d 1162, 1169 (2014). The Court appears to have raised the issuance of the tax deed and the definition of the word "encumbrance" in the last paragraph of the decision. This statement of the law was not necessary to the decision and, as such, is dicta. Because the Court's statement of the law was dicta, it is appropriate to address the interpretation of section 63-1009 here.

It appears section 63-1009 has been the law in Idaho since 1887. It "appears" because record keeping related to laws passed prior to that time was less than ideal and sometimes mistakes in indexing and updating occurred. Suffice it to say, 1887 is the date that it is clear that the law existed. Section 63-1009 has been re-codified over the years as the laws passed by the Idaho Legislature have expanded, but the statute has basically remained the same for nearly 130 years. The law when it was originally passed read as follows:

> The deed conveys to the grantee the absolute title to the lands described therein, free of all incumbrances, except any lien for taxes which may have attached subsequently to the assessment.

Rev. St. § 1557 (1887).

In 1932, the Legislature added the provision that a mortgage is not extinguished by a tax deed unless the mortgage holder was given notice of the proposed sale. The statute was changed to read:

> The deed conveys to the grantee the absolute title to the land described therein, free of all encumbrances <u>except mortgages of record to the holders of which notice has not been sent as provided in section 61-1027 and</u> except any lien for taxes which may have attached subsequently to the assessment.

I.C.A. § 61-1032 (1932). The only other part of the statute that changed in 1932 was the spelling of the word "incumbrance". It went from "incumbrance" to "encumbrance" to reflect the more modern spelling preference. The statute remained the same from 1932 until the Legislature modified it in 2016 in response to *Regan I.*

What does the term "encumbrance" mean and does it include a prescriptive easement? In *Regan I*, the Court answered these questions by using a definition articulated in *Hunt v. Bremer*, 47 Idaho 490, 494, 276 P. 964, 965 (1929). In *Hunt*, encumbrance was defined as "any right or interest in land to the diminution of its value, but consistent with the free transfer of the fee. It does not depend on the extent or amount of diminution in value, but embraces all cases in which

13

the owner does not acquire the complete dominion over the land which his grant apparently implies." *Id.* at 494, 276 P. at 965.

The *Hunt* case did not address the meaning of the term "encumbrance" in the context of the tax deed statute. In *Hunt* a landowner divided a parcel into 14 lots. *Id.* at 492, 276 P. at 964. There was one water right that was shared among all of the lots, and the irrigation company refused to split the right into fractional shares. *Id.* at 493, 276 P. at 965. The landowner sold two of the lots to a single purchaser on contract. *Id.* at 492, 276 P. at 964. The purchaser defaulted and argued as a defense that the landowner had failed to deliver good title because the water contract was an encumbrance. *Id.* at 492–93, 276 P. at 964–65. The purchaser argued that the irrigation company could place a lien on all of the lots for any one owner's failure to pay his fractional share of the maintenance costs. *Id.* at 493, 276 P. at 964–65. The Court decided that a water right enhanced the value of the land and that a lien for unpaid maintenance charges that might accrue in the future was not an encumbrance for purposes of warranty of title. *Id.* at 495–96, 276 P. at 966. Again, the Court never examined the meaning of the term "encumbrance" as it was used in the tax deed statute.

To understand what "encumbrance" means in the tax deed statute it is important to understand the history of the law. In 1885, the Legislature authorized the formation of a three-person commission to revise, simplify, arrange and consolidate all statutes of the Territory. *See* Introduction, Rev. St. of Idaho Territory (1887). The 1887 Revised Statutes were the final work product of that commission. The Revised Statutes were organized into four parts: (1) the Political Code ("enactments relating to the machinery of government"); (2) the Civil Code (relating to personal and private rights and private property); (3) the Code of Civil Procedure (regulating civil procedure in the courts); and (4) the Penal Code (crimes, criminal procedure, the Territorial prison and county jails). *Id.*

The Revised Statutes had general provisions which applied to the laws in all four codes. Section 15 of the general provisions set forth how statutes were to be interpreted. It stated:

> Words and phrases are construed according to the context and the approved usage of the language, but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law, or are defined in the succeeding section, are to be construed according to such peculiar and appropriate meaning or definition.

14

Rev. St. § 15 (1887). This provision is still part of Idaho law today. *See* I.C. § 73-113(3) (setting forth rules of construction for statutes).

The term "incumbrance" is a word that has acquired a "peculiar and appropriate" meaning in law. Under section 15 of the general provisions, the word should be given its "peculiar and appropriate" legal meaning or the meaning that has been provided by the legislature in a "succeeding section." The tax deed statute appeared in Title X of the Political Code which was titled "Revenue." Title X was broken down into eleven chapters. Chapter VII is titled "Collection of Property Taxes," and that is where the tax deed statute was codified. There was no definition of the word "incumbrance" in the code section that followed the tax deed statute or in Title X or anywhere in the Political Code.

There was a definition of the term "incumbrance*s*" (emphasis on the plural) in Title VI of the Civil Code. *See* Rev. St. § 2936. Title VI, Chapter II of the Civil Code governed transfers of real property. Section 2935 codified a warranty of title that was implicit in every transfer of real property. One of the warranties was "[t]hat such estate is at the time of the execution of such conveyance free from incumbrance*s* done, made, or suffered by the grantor." Rev. St. § 2935(2) (emphasis on plural added). Section 2936, the "succeeding section", then provided a definition of the word incumbrances, "The term 'incumbrances' includes taxes, assessments, and all liens upon real property." Rev. St. § 2936. The warranty of title provision and the subsequent definition of the term "incumbrances" still exist in Idaho law today. *See* I.C. §§ 55-612, 55-613. In fact, the Regans contend that the definition of "encumbrances" set forth in Idaho Code section 55-613 (which is identical to Rev. St. § 2936) should control this dispute.

I agree that the Court should narrowly construe the term "encumbrance" to mean a financial interest such as a mortgage, judgment lien, assessment or tax, but I do not agree that the Court can take a definition of a word adopted by the Legislature in a completely different context (in this case it was originally adopted as part of an entirely different code) and necessarily apply it here. In addition, this Court has previously held that the definition of the term "encumbrances" in Idaho Code section 55-613 is inclusive, rather than exclusive, meaning that the law may recognize forms of encumbrances that are not listed in the statute. *See Hoffer v. Callister*, 137 Idaho 291, 294, 47 P.3d 1261, 1264 (2002). While I agree the law takes us to the end result the Regans advocate, the route is different.

15

Since there is no applicable statutory definition of the term "incumbrance" and the word must be defined in its "peculiar and appropriate" legal sense, it is reasonable to consult a legal dictionary. Black's Law Dictionary at the time the tax deed statute was adopted defined the term "incumbrance" in the following ways:

> Any right to, or interest in, land which may subsist in third persons, to the diminution of the value of the estate of the tenant, but consistently with the passing of the fee. 8 Neb. 8; 2 Greenl. Ev. § 242.
> A claim, lien, or liability attached to property; as a mortgage, a registered judgment, etc.

Black's Law Dictionary (1st ed. 1891).

It is evident from these definitions that the word "encumbrance" can be construed in a general sense that could potentially encompass an easement (i.e., the *Hunt* definition stated in *Regan I*), and it can also be used in a narrower, more specific sense that means a financial interest (the definition advocated by Regans). If a word used in a statute is reasonably subject to more than one meaning, the statute is ambiguous, and the Court must construe the statute to mean what the Legislature intended. *Ada Cnty. Highway Dist. v. Brooke View*, *Inc.*, 162 Idaho 138, 142, 395 P.3d 357, 361 (2017). To determine the Legislature's intent, the Court must examine the words of the statute, the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history. *Id.* There is no legislative history to be found other than record of the tax deed statute's passage so the focus must be on the other factors.

In 1887, our Territory taxed real and personal property at the rate of 35 cents per one hundred dollars of assessed value. Rev. St. § 1410. The taxes assessed each year on both personal and real property were considered a judgment and became a lien upon the owner's real property. Rev. St. §§ 1412–14. The Territory taxed not only real property, but also water ditches, wagon toll roads, and telegraph lines. Rev. St. §1460. Railroads had a particularly noteworthy tax structure and were required to list for assessment their road-bed superstructure, rights of way and all structures thereon, rolling stock, side track, telegraph lines, furniture and fixtures, and other personal property. Rev. St. § 1463. The Territorial Board of Equalization was charged with valuing and assessing railroad property based on the number of miles of each road or line. *Id.* The county assessors were responsible for assessing real property owned by railroads outside of the rights of way. *Id.*

When taxes became delinquent, the owner's real property upon which the taxes were a lien could be sold at public auction. Rev. St. § 1531. If there was no good faith purchaser after

16

being put up for sale twice, then the property was "struck off" the Tax Collector's list to the county as the purchaser. Rev. St. § 1539. The Tax Collector had to issue the county a certificate of sale. Rev. St. § 1544. The owner of the real property had the right to redeem the property for at least one year, or up until the time the county disposed of it. Rev. St. §§ 1548, 1554. Once the redemption period expired, the Tax Collector had to issue a deed which mirrored the certificate of sale. Rev. St. §§ 1555–56. Once the deed was issued, the statute at issue came into play: "[t]he deed conveys to the grantee the absolute title to the lands described therein, free of all incumbrances, except any lien for taxes which may have attached subsequently to the assessment." Rev. St. § 1557.

The effect of tax deeds is something courts have wrestled with for years. The decisions are not in agreement and are driven in part by statutory provisions unique to each state. *See* Holly Piehler Rockwell, Annotation, *Easement, Servitude, or Covenant as Affected by Sale for Taxes*, 7 A.L.R.5th 187 (1992); *see also* Annotation, Easement or Servitude or Restrictive Covenant as Affected by Sale for Taxes, 168 A.L.R. 529 (1947). One case that is particularly instructive in analyzing the issue is *Engel v. Catucci*, 197 F.2d 597 (D.C. Cir. 1952).

In *Engel*, the court explained that an easement is not an encumbrance in the ordinary sense and is actually carved out of the landowner's estate and becomes part of the easement user's property:

> It is true, as Engel and the District say, that in the District of Columbia a tax deed extinguishes all liens, encumbrances and equities in and upon the parcel conveyed. ***But an easement is an interest in land which has peculiar characteristics of its own, being neither an estate nor a lien, an encumbrance nor an equity, in the ordinary sense of those terms.*** An easement appurtenant to another lot, when created by conveyance, attaches to the possession of that other lot and 'follows it into whosesoever hands it may come.' ***The owner of the dominant estate owns the easement.*** So the owner of the servient estate cannot by conveyance strip that estate of an easement which has by prior conveyance become part of the property right of the possessor of another parcel of land, unless, of course, the conveyance by which the easement was created permits it. We refer to the Restatement of Property, Division V, Part I, for a full discussion of these underlying considerations. These special characteristics of an easement appurtenant should carry through into the tax field. '(T)he appurtenant easement', as the Restatement says, 'presents a situation which calls for exceptional treatment.' An easement which lies upon one lot but is appurtenant to another lot is really part of the latter. It is carved out of the former. ***So it would appear that, when the servient lot is sold for taxes not paid upon it, the easement ought not***

17

*to pass to the purchaser; the lot should pass subject to the easement, or, to express it another way, the lot less the easement should pass.*).

*Engel*, 197 F.2d at 599-600 (emphasis added).

The *Engel* court's analysis makes sense in Idaho not only as it relates to appurtenant easements (i.e., those that are attached to the easement user's land), but also easements in gross (easements which belong to another person such as a utility company or railroad). In 1887, easement holders were actually taxed on their interests. Water ditches were taxed. Telegraph lines were taxed. Wagon toll roads were taxed. Railroad rights of way were taxed. In other words, the Territory had two sources of tax revenue. The Territory taxed the owner of the land where the easement was located and the holder of the easement. If we were to construe the tax deed statute to extinguish all easements, then we would also extinguish a source of revenue for the Territory and counties and deprive the easement holder of an important property interest without notice, compensation, or due process of law in the case of a recorded easement. That construction is unreasonable and is why I have concluded that the Legislature intended the term "encumbrance" to be construed narrowly in the sense of a financial interest.

Justice Jones concurs.